**Dr. Joseph T. SKEHAN, Plaintiff,**

v.

**BOARD OF TRUSTEES OF BLOOMS-BURG STATE COLLEGE et al., Defendants.**

Civ. No. 72–644.

United States District Court,
M. D. Pennsylvania.

May 18, 1977.

---

**25.** See note 21, *supra.*

Bruce J. Terris, Suellen T. Keiner, Eleanor M. Granger, Terris, Needham, Keiner, Black & Hostetler, Washington, D. C., Louise O. Knight, Clement & Knight, Lewisburg, Pa., for plaintiff.

Howard M. Levinson, J. Justin Blewitt, Jr., Dept. of Justice, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

### Introduction.

Skehan filed his complaint in the United States District Court for the Eastern District of Pennsylvania on October 10, 1972. On December 22, 1972, the case was transferred to this Court. On January 11 and 12, 1973, a hearing on his request for a preliminary injunction was held. On January 31, 1973, the Court declined to issue a preliminary injunction. In March, 1973, the parties agreed that no further testimony would be necessary in order for the Court to reach its final decision on the matter. On May 11, 1973, judgment in favor of Skehan in the amount of $1.00 together with costs was entered. On June 9, 1973, Skehan filed a notice of appeal. On May 3, 1974, the Court of Appeals remanded the case to this Court for further findings with respect to three enumerated issues of fact. *Skehan v. Board of Trustees,* 501 F.2d 31 (3d Cir. 1974). On July 30, 1974, the case was placed on the November, 1974 trial list. On October 11, 1974, after Skehan had received an extension from Justice Brennan to November 8, 1974 within which to file a petition for certiorari, the case was continued to the January, 1974 trial list to avoid the possibility of simultaneous proceedings in this Court and the United States Supreme Court. On October 31, 1974, Skehan's application for a stay of all proceedings pending the United States Supreme Court's decision upon his petition for writ of certiorari was denied because no petition for a writ of certiorari had been filed by Skehan. On November 8, 1974, Skehan filed a petition for the issuance of a writ of certiorari and the case was deleted from the January, 1975 list. On May 27, 1975, the Supreme Court granted the writ, vacated the judgment of the Court of Appeals, and remanded the case to the Circuit Court. *Skehan v. Board of Trustees,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975). On June 30, 1975, the Court of Appeals notified this Court of that decision and requested the record. On June 21, 1976, the Court of Appeals filed a decision again remanding this case to the Court for further findings with respect to two of the three factual issues which it had enumerated in its first opinion. *Skehan v. Board of Trustees,* 538 F.2d 53 (3d Cir. 1976). In addition, the Court of Appeals directed this Court to make findings of fact concerning the good faith of Defendant Nossen in failing to give Skehan a hearing prior to his termination as a professor at Bloomsburg State College. On July 15, 1976, and promptly after the mandate was issued, the case was placed on this Court's September, 1976 trial list. On August 27, 1976, it was continued at the request of counsel for both sides to the December, 1976 trial list. At the pre-trial conference on December 1, 1976, it became apparent that certain issues could be resolved without trial and that the remaining issues could most effectively be handled by continuing the case until January, 1977. On January 3, 1977, this case was further continued on Skehan's motion to the March, 1977 list because of the sudden death of the wife of Skehan's counsel. On February 28, 1977, this Court granted Skehan's motion to continue the case to the April, 1977 list because another of his counsel was under-

going surgery. On January 10, 1977, the Court denied Skehan's motion for leave to submit additional testimony concerning whether the decision not to renew Skehan's contract after the 1970–71 year was based on a stance on campus issues with which the administration disagreed. On February 11, 1977, the Defendants filed a motion and a brief for judgment in their favor on this claim. On March 15, 1977, Skehan filed a motion and a brief for judgment in his favor on this issue. On March 24, 1977, the Court issued an Opinion which found that the non-renewal of Skehan's contract did not stem from his stance on campus issues.

On April 14 and 15, 1977, the Court as required by the Court of Appeals heard testimony without a jury concerning whether the nature of Article 5e[1] of the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College was contractual under Pennsylvania law. The Court further heard testimony and argument as to whether Skehan had a right to the procedures set forth in 5e and, if so, whether the Defendant Nossen acted in good faith in failing to provide Skehan with these procedures. The Court also heard evidence concerning Nossen's good faith in not affording Skehan a hearing prior to his termination in October, 1970. This Court has previously held that the failure to provide a hearing was a violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Skehan v. Board of Trustees of Bloomsburg State College, et al.,* 358 F.Supp. 430 (M.D.Pa.1973).

 The 5e issue was never set forth in Skehan's complaint. In addition, it was never raised at the hearing in January, 1973. Counsel for both sides stated in open court on April 15, 1977 that the 5e issue was not raised, briefed, argued or alluded to before the Court of Appeals. The 5e issue first surfaced in the Opinion of the Court of Appeals. Failure to set forth the claim in any recognizable form in the complaint runs

afoul of the specificity requirement imposed by the Court of Appeals in § 1983 cases. *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir. 1976); *Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975). Because the issue was never raised by the Plaintiff at any stage of the proceedings in this Court, the Court of Appeals or the United States Supreme Court, it was, in my view, clearly waived by him. Creation of the issue by the Court of Appeals is, in my view, not consistent with our jurisprudential system. *G. H. McShane Company, Inc. v. McFadden,* 554 F.2d 111 (3d Cir. 1977); *System Operations, Inc. v. Scientific Games Development Corp.,* 555 F.2d 1131 (3d Cir. 1977). *Harbor Towing v. SS Calmar,* 507 F.2d 720 (4th Cir. 1974); *Hoblik et al. v. U. S.,* 151 F.2d 971, 972 (8th Cir. 1945). However, I have been directed by the Court of Appeals to consider the 5e issue and since I have taken an oath faithfully to perform all the duties incumbent upon me agreeably to the laws of the United States, I will treat the 5e issue as fully as if it had been alleged in the complaint, had been considered and decided adversely to the Plaintiff at the first trial, and had been briefed, argued, and decided in Plaintiff's favor on appeal.

### Findings of Fact.

1. Plaintiff Joseph T. Skehan was Associate Professor of Economics at Bloomsburg State College appointed in January, 1969.

2. Defendant Nossen was at all times pertinent to this case President of the College.

3. At the April 26, 1968 meeting of the Board of Trustees of Bloomsburg State College, the Trustees voted unanimously to adopt the "Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College," effective September 1, 1968. (Undisputed)

4. The second and third paragraphs of the document "A Statement of Policy for Continuous Employment and Academic

---

1. 5e conforms to the numbering system in the Statement of Policy. The Article is referred to as 5(e) in the Circuit Court opinion.

Freedom at Bloomsburg State College" have the following recitation:

"Bloomsburg State College, wishing to insure the more effective services of faculty members, is willing to take steps to protect their economic security.

"The adoption of any policy regarding employment involves a voluntary limitation of authority of the President and the Board of Trustees * * *." (Undisputed)

5. The document "A Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College" provides that:

"As a citizen and a member of the teaching profession, the faculty member is entitled to speak and act with freedom from institutional censorship and discipline." (Undisputed)

6. The "Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg College" provides that "[i]t is understood that this is a statement of policy which will be honored in all practical situations." (Undisputed)

7. A section of the Statement of Policy entitled "Legal Limitations and/or Revisions" provides, "All provisions herein stated will be held to be in effect unless found to contravene present or future statutes of the Commonwealth. If a revision of the policy is necessary, the revision shall be a matter of negotiation involving the President of the College, the Board of Trustees, and the Faculty." (Undisputed)

8. By memorandum dated February 3, 1969, to "New Faculty Members," the President of Bloomsburg State College requested that the recipients read the "Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College" and "date and sign the lower portion of this memorandum" and return it to the President's office. (Undisputed)

9. On March 4, 1969, Plaintiff signed and returned to the President's office the form attached to the "Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College" which recited that he had read the Statement. (Undisputed)

10. On July 27, 1970, Defendant Nossen wrote to Deputy Attorney General Williams concerning institution of a suit against the college by another college professor and enclosed a summary of *Roth v. Board of Regents of State Colleges,* 310 F.Supp. 972 (W.D.Wis.1970) which related to the constitutional rights of a non-tenured faculty member who was terminated without a prior hearing.

11. By letter dated August 6, 1970, Defendant Nossen wrote to the Associate Secretary of the American Association of University Professors and assured him that ". . . this college followed all appropriate procedures in the case of Dr. Maxwell Primack. When he asked for a hearing before the college Committee on Professional Affairs, he was granted that hearing, before the Professional Affairs Committee, which rejected his plea."

12. The Committee on Professional Affairs is described in the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College as a committee of the faculty. (Undisputed)

13. At its February 27, 1970, meeting, the Board of Trustees voted unanimously to accept the recommendation of Defendant Nossen, based upon "a unanimous evaluation by the Department Chairman, Division Director and Dean of Instruction," that Plaintiff be notified that he was reappointed for the 1970–71 academic year, with that year being the terminal year of his appointment. (Undisputed)

14. In February, 1970, Dr. Hoch, Dean of Instruction, orally informed Skehan that he was recommending that he not be renewed beyond June, 1971.

15. Defendant Nossen did not consult legal counsel regarding the decision not to renew Plaintiff's appointment for the 1971–72 academic year. (Undisputed)

16. Article 5e of the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College provides that "[i]f a faculty member's service

to the College is to be terminated during the first two years of the probationary period, the President of the College will feel free to explain to the faculty member the basis of the decision, but he shall not be required to do so except in a situation where there is an allegation of an infringement of academic freedom. If a faculty member of professional [sic] rank, on probationary appointment, alleges that a decision not to reappoint him has been caused by considerations violative of academic freedom his allegation shall be given preliminary consideration by the Committee on Professional Affairs, and the procedures concerning notification, appeal, hearing, and defense outlined in # 9 of this document will be followed." (Undisputed)

17. Defendant Nossen did not consult legal counsel at any time prior to his dismissal of Plaintiff concerning the meaning of Article 5e of the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College.

18. The Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College in ¶ 4 provides that "[d]uring the second academic year of the probationary period, the President of the College shall inform the faculty member on or before December 15, whether or not his services will be desired for the following academic year. The faculty member shall indicate in writing his acceptance of the appointment within ten (10) days." (Undisputed)

19. Defendant Nossen's letter of May 19, 1970, in which he notified Plaintiff of the Board of Trustees' action confirming Plaintiff's non-renewal, included at the bottom the following statement which Plaintiff was requested to fill out, sign, and return to Defendant Nossen's office:

"I _____ accept _____ decline the offer of reappointment for the 1970–71 academic year and understand that this is the terminal year of employment at Bloomsburg State College.
Date _____ Signed _____" (Undisputed)

20. By letter dated May 29, 1970, Plaintiff informed Defendant Nossen that "[a]ccording to the provisions on page three of Bloomsburg State's 'Statement of Policy for Continuous Employment and Academic Freedom,' I have a reappointment for the Academic year 1970–71. * * * I intend to fulfill the 1970–71 appointment." (Undisputed)

21. By letter dated June 1, 1970, Defendant Nossen informed Plaintiff that he could not accept his letter of May 29, 1970, as an acceptance of reappointment for the coming year, and that if Plaintiff did not sign the offer of appointment sent to him, he could consider himself terminated for the coming academic year. (Undisputed)

22. By letter of June 10, 1970, Plaintiff informed each member of the Board of Trustees that he had accepted Defendant Nossen's offer of reappointment for the 1970–71 academic year within the prescribed 10 day period but had subsequently been notified by Defendant Nossen that he should consider himself terminated if he did not sign the release statement at the bottom of Defendant Nossen's letter offering the appointment. (Undisputed)

23. By letter dated June 15, 1970, Defendant Nossen informed Plaintiff that Plaintiff's "refusal, to this point, to return the contract in accord with * * * prescribed procedures continues to indicate * * * your disregard for college procedures,". because Plaintiff would not accept his reappointment by signing the "contract form which is applicable to all persons offered appointment." (Undisputed)

24. By his letter of May 19, 1970, Defendant Nossen notified Plaintiff that "prior to the expiration of your first year of service you were notified that your contract would not be renewed after the 1970–71 academic year. This was confirmed by Board of Trustees action on February 27, 1970." (Undisputed)

25. By letter of May 29, 1970, Plaintiff informed Defendant Nossen that "no notification of any decision about non-renewal has reached me." (Undisputed)

26. By his letter dated May 29, 1970, Plaintiff informed Defendant Nossen that

"[r]eview of appropriate college regulations and professional procedures indicates a series of probable infringements of due process in the question of non-renewal after June, 1971. I may decide to have the matter reviewed by appropriate agencies in due course." (Undisputed)

27. Almost from the beginning of classes in September, 1970, Plaintiff refused to teach his classes regularly, engaged another professor to teach his classes although he was in the classroom, and defied the orders of his superiors to cease the practice.

28. By letter of September 21, 1970, Plaintiff notified Defendant Nossen that "I hereby invoke article 5e of the Bloomsburg State College 'Statement of Policy for Continuous Employment and Academic Freedom,' affirming that the decision not to reappoint me has been caused by considerations violative of academic freedom." (Undisputed)

29. Defendant Nossen did not respond to Plaintiff's letter of September 21, 1970.

30. Article 9 of the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College provides that administrative officers shall discuss a faculty member's dismissal with him and, "if the matter has not been resolved at this point, it shall then be referred to the Committee on Professional Affairs for the Faculty * * *." If after consideration and recommendation by the Committee on Professional Affairs, the President nevertheless reaffirms his action, "the faculty member may request that the President initiate the procedure for a hearing * * before an ad hoc committee elected by the Faculty. The President of the College must notify the Faculty of the College that such a committee must be elected." (Undisputed)

31. Defendant Nossen discussed Plaintiff's September 21, 1970, letter invoking Article 5e of the Statement of Policy for Continuous Employment and Academic Freedom and the meaning of Article 5e with Trustees William Lank and William Booth, "neither of whom made any suggestion on the need for further action on the matter." (Undisputed)

32. Nossen had never previously received a letter similar to the one submitted by Skehan invoking Article 5e and had never referred a request to invoke 5e to the Committee on Professional Affairs. After receiving Skehan's letter of September 21, 1970, Nossen did not read Article 5e.

33. Nossen assumed that the Committee on Professional Affairs was the proper body to initiate the procedures under Article 5e.

34. Plaintiff Skehan did not apply to the Committee on Professional Affairs or any member thereof for a hearing on his 5e claim and did not send to the Committee on Professional Affairs or any member thereof a copy of his letter to Defendant Nossen invoking 5e.

35. Nossen did not know that Skehan had a constitutional right to the procedures of 5e.

36. By letter dated October 9, 1970, Defendant Nossen notified Plaintiff that he was relieving him "of all classroom responsibilities, pending a final hearing."

37. Plaintiff's suspension was caused by his refusal to teach his classes in defiance of orders from his superiors.

38. Defendant Nossen consulted Trustees William Lank and William Booth, and attorney William Williams of the Department of Justice of the Commonwealth of Pennsylvania, concerning the course of action set forth in his letter of October 9, 1970, to Plaintiff in which he informed Plaintiff that he was "relieving [him] of all classroom responsibilities, pending a final hearing."

39. No "final hearing" as referred to in Defendant Nossen's letter of October 9, 1970, was held prior to Plaintiff's dismissal. (Undisputed)

40. Notwithstanding his suspension on October 9, 1970, Plaintiff continued to meet with classes at the regularly scheduled times and places.

41. By letter dated October 19, 1970, with copy to William Williams, Deputy Attorney General of Pennsylvania, Defendant

Nossen notified Plaintiff that he was removed from the payroll effective October 17, 1970, "subject to final approval by the Board of Trustees." (Undisputed)

42. At its October 23, 1970 meeting, the Board of Trustees received an "oral report" from Defendant Nossen regarding the activities of Plaintiff and was notified that Plaintiff had been "relieved of . . . teaching responsibilities with full pay following oral and written directives of College administrators requesting [him] to meet [his] assigned classes, directives which were not followed."

43. At its October 23, 1970, meeting, the Board of Trustees heard read into the record the correspondence between Defendant Nossen and Plaintiff regarding the scheduling controversy which gave rise to Plaintiff's removal from teaching responsibilities. At the conclusion of the presentation of correspondence between Defendant Nossen and Plaintiff regarding the scheduling controversy, Defendant members of the Board of Trustees voted unanimously to approve the October 19 action of Defendant Nossen terminating Plaintiff, effective October 17. (Undisputed)

44. No member of the Board mentioned that the Constitution might require a pre-termination hearing.

45. Nossen did not know that Skehan had a constitutional right to a pretermination hearing.

46. By letter of October 24, 1970, Defendant Nossen notified Plaintiff that he was "fully and finally terminated at the College effective October 17, 1970," as a result of the Board of Trustees' action at its meeting on October 23, 1970, confirming the prior dismissal action taken by Defendant Nossen. He added that there was "no other possible alternative" to this action. (Undisputed)

47. Despite Plaintiff's termination on October 19, 1970, the Plaintiff refused to recognize the same and continued to meet with students in accordance with pre-existing schedules and in the rooms regularly scheduled for such classes.

48. Plaintiff informed his students that they would receive academic credit from Bloomsburg State College for attending his classes.

49. The college officials were obliged to schedule classes at different locations because of Plaintiff's activities.

50. The Administration at Bloomsburg State College informed Skehan's students, after he was relieved of classroom responsibilities, that no credit would be given for attending Skehan's classes.

51. Plaintiff refused to vacate his office after the above mentioned suspension and termination.

52. The Plaintiff's activities just mentioned caused great confusion among the students and the faculty.

53. The students were uncertain as to which class or classes to attend.

54. Defendant Nossen filed an action against Plaintiff in the Court of Common Pleas of Columbia County, Pa. in December, 1970 to restrain the Plaintiff from conducting classes and occupying classrooms in defiance of administrative orders after his termination as a faculty member.

55. On March 12, 1971, the Court of Common Pleas with Honorable G. Thomas Gates of Lebanon County, specially presiding by order of the Supreme Court of Pennsylvania, entered a consent decree enjoining Plaintiff from conducting classes at Bloomsburg State College.

56. Defendant Nossen kept the Department of Justice of the Commonwealth of Pennsylvania informed concerning developments in the Skehan controversy and consulted with Deputy Attorney General Williams on a regular basis concerning this matter.

57. The Superintendent of Education had two attorneys on his staff during the years 1968–1970. (Undisputed)

58. The attorneys on the staff of the Superintendent of Education were available for consultation with Defendant Nossen concerning his official responsibilities during this period.

59. No one in the Department of Justice of the Commonwealth of Pennsylvania ever informed Nossen prior to the filing of this suit that it was unconstitutional to terminate Skehan in October, 1970 without a prior hearing.

60. Nossen conferred with the American Association of University Professors concerning Bloomsburg State College's dispute with Skehan.

61. Skehan received a hearing concerning his termination in October, 1970 on December 1, 1970.

62. Member of the Board of Trustees Frank D. Croop received a legal degree from Dickinson School of Law, had served as a member of the Pennsylvania Constitutional Convention and had served as an arbitrator concerning public employment contracts. (Undisputed)

63. Croop was present when the Board of Trustees of Bloomsburg College approved the firing of Skehan on October 23, 1970.

64. Member of the Board of Trustees George W. Heffner from 1968 to the present has been Judge of the Court of Common Pleas of Schuylkill County, Pennsylvania.

65. Heffner was present when the Board of Trustees of Bloomsburg College approved the firing of Skehan on October 23, 1970.

66. On October 21, 1970, when Skehan went to Nossen's office to request a salary check, Nossen pounded on the table and stated that he intended to "ruin" and "destroy" Skehan.

### Discussion.

◼ Nossen contends that even if Article 5e of the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College creates a contractual right for a hearing when a. nontenured professor alleges that the decision not to renew him for the following academic year was based upon considerations violative of academic freedom, such an entitlement only arises against the college, not against any officer or official of that institution and therefore the Court lacks jurisdiction over this issue. Nossen's argument assumes that Pennsylvania law determines who can be sued for a constitutional violation pursuant to 42 U.S.C. § 1983. Pennsylvania law is referred to in order to determine if a contractual interest exists. If the contract interest is created by state law, then certain due process procedures required by the Fourteenth Amendment of the United States Constitution attach. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The question as to who is liable is determined by federal law, not state law. Consequently, the Court rejects Nossen's contention that it lacks jurisdiction over this issue.

◼ To determine whether 5e creates a contract claim pursuant to Pennsylvania law, the entire document in which it is contained, the Statement of Policy, must be examined. The Statement of Policy was adopted by the Board of Trustees at Bloomsburg State College on April 26, 1968. It is prefaced by the following statement:

"Bloomsburg State College, wishing to insure the more effective services of faculty members is willing to take steps to protect their economic security."

"The adoption of any policy regarding employment involves a voluntary limitation of authority of the President and the Board of Trustees as set forth in the administrative code."

\* \* \* \* \* \*

"It is understood that this Statement of Policy should be honored in all practical situations."

According to the policy statement, all of its provisions are held to be in effect unless they contravene present or future statutes of the Commonwealth of Pennsylvania. If revisions of policy are required, the Statement of Policy provides that they shall be the subject of negotiation involving the President of the College, the Board of Trustees, and the faculty. The Statement of

Policy also requires that each member of the faculty be given a copy of it at the time of his initial employment and that he acknowledge familiarity with it. Article 5e of the Statement of Policy sets forth certain procedures to be followed when a faculty member is terminated during the first two years of his probationary period. In addition, it provides that when a faculty member of professorial rank on probationary appointment alleges that a decision not to reappoint him has been caused by considerations violative of academic freedom, his charges shall be given preliminary review by the Committee on Professional Affairs.

The Statement of Policy sets forth its purpose in terms that meet the general requirement that a contract be supported by consideration. The first paragraph of the Statement of Policy states that in an effort to obtain more effective services from its faculty members Bloomsburg State College offers procedural steps to protect their economic security.

 Defendant Nossen contends that the Statement of Policy is merely a fortuitous promise which the administration can honor or disregard according to its desires. Pennsylvania law requires that for there to be an enforceable contract, the nature and extent of its obligations must be certain. *Lombardo v. Gasparini*, 385 Pa. 388, 393, 123 A.2d 663, 666 (1956). Nossen maintains that the following sentence in the Statement of Policy establishes that there is no consideration and that the nature of the obligations are uncertain: "It is understood that this is a statement of policy which should be honored in all practical situations." The term "practical situations" can easily be interpreted by a factfinder. It does not render a contract unenforceable. In *Joynes v. Pennsylvania Rail Company*, 235 Pa. 232, 83 A. 1016 (1912), the Supreme Court of Pennsylvania upheld the enforcement of a contract which depended upon the practicality of the circumstances. The promise given by the policy statement is not indefinite but may only be voided when the college or its agents can establish that compliance is impractical.

Defendant Nossen also contends that because of Skehan's allegedly untimely presentation of his claim under Article 5e, it was not practical for him to adhere to its procedures. In February of 1970, Skehan was orally notified that he was not going to be reappointed after the 1970–71 academic year. The decision not to reappoint Skehan was approved by the Board of Trustees at Bloomsburg State College on February 27, 1970. Skehan was sent written notification of the decision not to reappoint him by a letter of May 19, 1970, written by Nossen. On September 21, 1970, Skehan wrote a letter to Defendant Nossen, invoking Article 5e. Neither Article 5e nor Article 9 of the Statement of Policy sets forth any time limitations concerning the submission of the claim by a faculty member pursuant to Article 5e. Nossen argues that because Skehan sought to invoke 5e at the same time he was refusing to adhere to the class schedules established by the administration of the college it was not possible to implement 5e. No evidence was presented to support this contention.

 Under Pennsylvania law when a contract is silent as to the time of its performance, a requirement of performance within a reasonable time is read into the contract. Thus, as long as Skehan submitted his claim within a reasonable time, he would be entitled to the procedures of Article 5e. Because the academic year at Bloomsburg ended on May 24, Skehan maintains that he waited until classes commenced in September when the members of the Committee on Professional Affairs would be on campus. In waiting four months to submit his case pursuant to Article 5e he acted within a reasonable time.

 Nossen maintains that since Skehan failed to meet his assigned classes in September, 1970, he was not entitled to the protection of Article 5e. The very purpose of Article 5e is to enable a professor charged with not properly performing his duties to establish that he was discharged for exercising academic freedom. Because Skehan had a property interest in the procedures of Article 5e, the failure to follow

those procedures violated the Fourteenth Amendment of the United States Constitution.

The Defendant Nossen can avoid liability if he establishes by a preponderance of the evidence that he meets the good faith test set forth in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 232 (1975). In *Wood,* the Court stated that an official is not immune to liability for damages under § 1983 if he knew or reasonably should have known that the action he took was (1) within his sphere of official responsibility and would violate the constitutional rights of the individual affected or was (2) with the malicious intention to deprive the individual of constitutional rights or cause him other injury. That is not to say that officials are charged with predicting the future course of constitutional law. A compensatory award will be appropriate only if the official acted with an impermissible motivation or with such disregard of the Plaintiff's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. Thus, this test requires both so-called objective and subjective good faith. Nossen established by a preponderance of the evidence that his failure to initiate the procedures of 5e for Skehan was without malice. Nossen testified that he was not aware that he had responsibility to initiate 5e proceedings. Nossen's statement to Skehan that he intended to ruin him occurred approximately one month after Skehan had sent the letter to Nossen invoking 5e. Nossen's comment obviously was caused by Skehan's defiance of the college authorities in meeting with classes after he was terminated. The situation deteriorated to such a point that the College was obliged to obtain an injunction to prevent Skehan from conducting classes.

An examination of Article 5e and Article 9 of the Statement of Policy of the college by the Court has not shown that they set forth whose responsibility it is to initiate their procedures. Article 5e states that "if a faculty member of professorial rank on probationary appointment alleges that a decision not to reappoint him has been caused by considerations violative of the academic freedom, his allegation should be given preliminary consideration by the Committee on Professional Affairs . . ." Nothing is said concerning who is to submit the matter to the committee, the faculty member, the President of the College, or some other administrator. Article 9 states that if a faculty member has been recommended for dismissal, the appropriate administrative officers will discuss the matter with him in a personal conference and that if the matter has not been resolved at this point, it shall then be referred to the Committee on Professional Affairs of the faculty. Again, this provision does not indicate who is to refer the matter to the Committee. It was reasonable for Nossen to conclude that it was not his responsibility to submit Skehan's letter to the Committee on Professional Affairs of the faculty. Nossen testified that he could not recall referring such a request to that committee in any other case. Although Nossen indicated that at the time he received Skehan's letter calling for an invocation of the procedures of Article 5e he did not read Article 5e, this action was not unreasonable. Even if he had read 5e, he would have received little guidance as to the appropriate course of conduct. No reason existed for Nossen to seek legal counsel. No event occurred to cause Nossen to believe that he had responsibility for initiating the procedures under 5e. A public official is only required to seek legal counsel when he reasonably should suspect that the actions he is about to take may be unlawful.

Skehan should have at least submitted a copy of his letter of September 21 to the Committee on Professional Affairs. Requiring Nossen as college president to submit correspondence directed to him to a committee of the faculty as well known to Skehan as to Nossen places an unreasonable burden upon Nossen. A college president receives literally dozens of letters a day. He simply cannot determine to whom each complaint or problem should have been addressed. The aggrieved party must bear the responsibility for channelling his claim to the proper party.

■ There was no clear and established right pursuant to the Fourteenth Amendment to the procedures contained in Article 5e in 1970. The constitutional claim depends upon a contractual obligation to provide these procedures. It was not the clear and established law of Pennsylvania in 1970 that the Statement of Policy created a binding agreement. In the light of the foregoing, the Court concludes that Nossen has established by a preponderance of the evidence that he acted in good faith and in a reasonable manner when he did not submit Skehan's request for an invocation of Article 5e to the Committee on Professional Affairs.

This Court has previously found that Skehan's termination on October 19, 1970 without a prior hearing violated the due process clause of the Fourteenth Amendment of the United States Constitution. Nossen is entitled to immunity from damages for failure to provide Skehan with a hearing if he can establish by a preponderance of the evidence that he acted in good faith and in a reasonable manner. He has established by a preponderance of the evidence that his termination of Skehan without a prior hearing was not malicious. Nossen frequently consulted with Deputy Attorney General Williams concerning the difficulties between Skehan and the College. In addition, he also requested advice from the American Association of University Professors. He did grant Skehan a hearing approximately one and one half months after he was terminated. While this hearing was constitutionally inadequate since it was after the termination, it does tend to show a lack of malice. Although on October 21, 1970 when Skehan went to Nossen's office to request a salary check, Nossen pounded on the table and stated that he intended to ruin or destroy Skehan, this does not significantly diminish Nossen's showing of no malice. This incident occurred on October 21, two days after Skehan had been terminated. Before firing Skehan Nossen had suspended him from teaching on October 9, 1970. His actions were designed to prevent Skehan from teaching classes at previously assigned times. After Skehan's suspension Skehan

did continue to meet with his classes. Even after he was terminated on October 19, 1970, Skehan still met with his classes. Nossen was understandably concerned that this was creating confusion among the students. The administration was advising them that they would no longer receive credit from attending these classes and Skehan was stating that they would receive credit if they attended the classes taught by him. It is probable that Nossen's statement resulted from Skehan's unwillingness to stop meeting with his classes even after he had been terminated.

Nossen must also establish by a preponderance of the evidence that he did not know and reasonably need not have known that depriving Skehan of a pretermination hearing violated due process. *Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 62 (3d Cir. 1976). In *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 232 the Supreme Court stated that a public official must establish, in order to escape liability, that he had not violated a clearly established constitutional right. Thus, this Court must determine whether in October, 1970 it was the law of the land that a nontenured professor at a state college was entitled to a hearing before termination. Skehan's counsel contends that *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Sindermann v. Perry,* 430 F.2d 939 (5th Cir. 1970) clearly establish that termination of a teacher without a prior hearing violated the due process clause in October, 1970. *Pickering* deals with the firing of a teacher for exercising his First Amendment rights. The opinion does not set forth due process standards for the termination of a teacher where no First Amendment claims are at issue. Although *Sindermann v. Perry, supra,* does require that a hearing be held before a teacher can be terminated, the holding of one circuit court does not render a constitutional principle clearly established. In the absence of a Supreme Court case or an opinion of the United States Court of Appeals for the Third Circuit creating a particular constitu-

tional right, it would be unreasonable to require a president of a state college in Pennsylvania to know that his actions violated the Constitution.

Although Nossen did read a summary of the district court's opinion in *Roth v. Board of Regents of State Colleges,* 310 F.Supp. 972 (W.D.Wis.1970), this was not enough to put him on notice that Skehan had a right to a pretermination hearing. A decision of a district court in Wisconsin does not establish a clear principle of constitutional law for a college president in Pennsylvania. Nossen forwarded the summary to his counsel, Deputy Attorney General Williams.

In *Hostrop v. Board of Junior College, District No. 515,* 523 F.2d 569 (7th Cir. 1975), *cert. den.,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976), the United States Court of Appeals for the Seventh Circuit was faced with a problem similar to that with which this Court is now faced. The Plaintiff was discharged from his position as president of a college without being accorded a hearing in July, 1970. The Court concluded that "The first definitive holding that a termination of teachers' property interests in their employment contracts with state institutions required due process hearings was *Board of Regents of State Colleges v. Roth,*" 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *Id.* at 578, 92 S.Ct. 2701. This Court agrees with the analysis of the United States Court of Appeals for the Seventh Circuit.

The reasonableness of Nossen's lack of knowledge of due process requirements may also be measured by whether he consulted legal counsel. Nossen sent a copy of the letter terminating Skehan to Deputy Attorney General Williams. Williams never informed Nossen that Skehan had a right to a hearing prior to the termination. No one from the Department of Justice ever informed Nossen that he had violated Skehan's constitutional rights.

In the light of the foregoing, the Court concludes that Nossen acted in a reasonable manner when he terminated Skehan without a prior hearing on October 19, 1970 and did not violate a clearly established constitutional right.

### Conclusions of Law.

1. Skehan possessed a contract right to the procedures of Article 5e of the Statement of Policy of Bloomsburg State College.

2. Skehan acted within a reasonable time in invoking his claim pursuant to Article 5e.

3. The failure to afford Skehan the procedures contained in Article 5e of the Statement of Policy of Bloomsburg State College violated the due process clause of the Fourteenth Amendment of the United States Constitution.

4. Nossen acted in good faith and without malice in not affording Skehan the procedures of Article 5e.

5. Nossen acted in a reasonable manner and did not violate a clearly established constitutional right when he did not initiate the procedures of Article 5e of the Statement of Policy of Bloomsburg State College.

6. Nossen acted in good faith and without malice in terminating Skehan on October 19, 1970 without affording him a prior hearing.

7. Nossen acted reasonably and did not violate a clearly established constitutional right when he terminated Skehan without affording him a prior hearing.

An appropriate order will be entered.