**Joseph T. SKEHAN, Plaintiff,**

v.

**BOARD OF TRUSTEES OF BLOOMS-BURG STATE COLLEGE et al., Defendants.**

**Civ. No. 72–644.**

United States District Court, M. D. Pennsylvania.

Nov. 28, 1980.

As Amended Jan. 29, 1981.

---

David L. Glassberg, Hazelton, Pa., for plaintiff.

Susan J. Forney, Deputy Atty. Gen., Dept. of Justice, Commonwealth of Pa., Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

This case is before this court on remand from the Court of Appeals for a determination under 42 U.S.C. § 1988 of Plaintiff's entitlement to attorney's fees and, if he is entitled to any, the amount of those fees as a result of Plaintiff's modest success on the merits of this action. *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). The Plaintiff seeks an award of $120,738.64 in fees and expenses. Also pending before the undersigned as a Master appointed by the Court of Appeals by order dated September 2, 1980, is Plaintiff's application for attorney's fees for appellate work. That application has been referred to U. S. Magistrate Raymond J. Durkin for preliminary work and will be the subject of future proceedings. A hearing on Plaintiff's application for fees and expenses relating to district court work was held on September 10, 12, and 15, 1980. This opinion will dispose of Plaintiff's claims for attorney's fees for district court proceedings through September 15, 1980 with the exception of fees for work relating to two motions unrelated to attorney's fees filed by Plaintiff in September 1980.

### II. Findings of Fact.

1. On October 10, 1972, Plaintiff filed a complaint against the Defendants with claims that they had violated his constitutional rights by their failure to provide him with a hearing prior to his termination on October 17, 1970 and by their failure to provide him with procedures to which he was entitled when the Defendants made the decision not to renew Plaintiff's contract after the 1970–71 academic year.

2. Plaintiff sought, *inter alia*, to be granted full backpay and reinstatement.

3. Suit was brought originally in the United States District Court for the Eastern District of Pennsylvania. (Undisputed fact, hereinafter designated U).

4. Defendants opposed this choice of venue.

5. Harry Lore represented Plaintiff in the district courts in 1972 and 1973. (U)

6. Mr. Lore seeks compensation for 120.5 hours of office time at $50.00 per hour and 16 hours of court time at $75.00 per hour. He also seeks $464.13 in costs and expenses. Multipliers on both are sought.

7. Mr. Lore reviewed Plaintiff's papers, researched and prepared Plaintiff's complaint, represented Plaintiff at the hearing in this court on Plaintiff's motion for a preliminary injunction, and prepared a memorandum of law on venue, a memorandum of law on laches, a reply to Defendants' brief, proposed findings of fact, conclusions of law, another memorandum of law, and a motion to amend judgment and an accompanying brief.

8. Mr. Lore graduated in 1958 from Temple Law School.

9. Mr. Lore was admitted to the Bar of the Supreme Court of Pennsylvania in 1958 and is a member of the Bar of the Supreme Court of the United States.

10. At the time that he represented Plaintiff in this Court, Mr. Lore had practiced law for at least ten years, primarily as an attorney in civil rights cases.

11. At the time he represented Plaintiff, Mr. Lore was engaged in the practice of law in Philadelphia, Pennsylvania where attorneys of his training, experience and skill customarily charged for work of this type $75.00 per hour for court time and $50.00 per hour for office time which are both reasonable.

12. Work done by Mr. Lore on the following dates for the following periods of

time was devoted to issues raised in this case in addition to the due process claims for nonrenewal and termination and no attempt was made by Plaintiff to prove the amount of time that was reasonably supportive of the due process issues: October 7 through 9, 1972, 15 hours; November 17, 1972, 10 hours; November 22, 1972, 2 hours; March 17 through 22, 1973, 38 hours; April 26, 1973, 4 hours; May 12 through 14, 1973, 17 hours, for a total of 86 hours.

13. Of the 120.5 hours of office time spent by Mr. Lore only 34.5 hours were proved to have contributed to Plaintiff's success in this case.

14. Mr. Lore spent 16 hours of courtroom time at the preliminary injunction hearing, all of which contributed to Plaintiff's success in this case.

15. Mr. Lore's lodestar–hours reasonably supportive of Plaintiff's claims multiplied by a reasonable hourly rate–is $1725.00 for office time, $1200.00 for court time for a total of $2925.00.

16. It was reasonable for Mr. Lore to have incurred expenses of $464.13 and those expenses contributed to Plaintiff's success.

17. Costs of $171.60 have already been awarded Mr. Lore, leaving $292.53 in expenses to which he is entitled.

18. A preliminary injunction was sought and hearings were held on January 11 and 12, 1973.

19. Defendants were the prevailing parties at the preliminary injunction stage of this case. (U)

20. Plaintiff prevailed in this Court in 1973 on his claim that Defendants violated his due process rights by their failure to provide him a hearing prior to his termination. (U)

21. This court awarded Plaintiff $1.00 in damages plus costs on May 9, 1973.

22. Mr. Lore filed a two–page motion requesting attorney's fees on or about May 18, 1973.

23. The motion was denied.

24. Plaintiff through Mr. Lore raised in a highly tangential fashion at the prelimi-nary injunction hearing in the district court in 1973 the issue of whether his constitutional rights had been violated by not being afforded the procedures of Article 5e of the Statement of Policy for Continuous Employment and Academic Freedom of Bloomsburg State College, which related not to termination but to non–renewal of his contract.

25. The issue of non–renewal was not pertinent to the preliminary injunction hearing which was concerned with termination, not non–renewal.

26. Mr. Lore did not argue the 5e issue to the Court at the preliminary injunction hearing or submit proposed conclusions of law, as required by the Court's practice order.

27. The matter was submitted to the Court for a final determination on the basis of the record developed at the preliminary injunction hearing.

28. When the case was submitted for final determination, Mr. Lore did not call the Court's attention to the 5e issue or in any manner make any argument with respect to it.

29. Plaintiff appealed the decision of this Court of May 9, 1973 to the United States Court of Appeals for the Third Circuit. (U)

30. Plaintiff prevailed in the Court of Appeals in that the case was remanded to this court for findings as to whether Defendants had violated Plaintiff's First Amendment and due process rights in the course of their decision not to renew his contract, the 5e claim, and this court's ruling that Plaintiff's due process rights had been violated by Defendants' failure to provide him with a hearing prior to termination was upheld.

31. The Court of Appeals also determined that Defendants were immune from liability to Plaintiff in damages because they were engaged in discretionary functions. (U)

32. Plaintiff filed a petition for a writ of certiorari in 1974 on the issues of sover-

eign immunity, official immunity and attorney's fees. (U)

33. The Supreme Court, which granted Plaintiff's petition for a writ of certiorari, vacated the judgment of the Court of Appeals and remanded for further consideration on the issues of official immunity and attorney's fees. (U)

34. The Court of Appeals on remand from the Supreme Court ruled that Plaintiff was entitled to an award of damages if the individual defendants did not meet their burden of proof on official immunity and that Plaintiff was entitled to an award of attorney's fees if Defendants had litigated in bad faith. (U)

35. Defendant Bloomsburg State College prevailed in the Court of Appeals in that the Court recognized sovereign immunity as a bar to any award of back pay against it.

36. Robert B. Elion and Robert B. Wayne using the style of Elion–Wayne represented Plaintiff initially in proceedings in this court on remand from the Court of Appeals from July 29 to October 20, 1976. (U)

37. Elion–Wayne seeks compensation for 84.85 hours at $35.00 per hour and costs and expenses of $54.21, plus multipliers.

38. Mr. Elion and Mr. Wayne reviewed Plaintiff's case, analyzed the requirements for discovery, researched and prepared a motion to shorten the period of time allowed for production of documents, prepared a request for the production of documents and researched and prepared motions to compel and briefs in support thereof.

39. Mr. Elion graduated from the University of Iowa Law School in 1971 and is a member of the Bar of the Supreme Court of Pennsylvania and of the Bar of the State of Iowa.

40. From 1971 to 1973, Mr. Elion served as an attorney in legal services projects in Minnesota and Oregon. From 1973 to the time he represented Plaintiff in 1976, Mr. Elion was the managing attorney and director of litigation for Susquehanna Legal Services in Bloomsburg, Pennsylvania.

41. Mr. Wayne graduated in 1973 from Suffolk University Law School and is a member of the Bar of the Supreme Court of Pennsylvania and of the Bar of the Commonwealth of Massachusetts.

42. Mr. Wayne was employed from 1973 to 1976 as an attorney for Susquehanna Legal Services in Bloomsburg and Sunbury, Pennsylvania.

43. At the time that they represented Plaintiff before this Court in 1976, Mr. Elion and Mr. Wayne were engaged in the practice of law in Williamsport, Pennsylvania, where attorneys of their training, experience, and skill customarily charged $35.00 an hour for the kinds of services they rendered Plaintiff which is a reasonable rate.

44. From May 22, 1980 through September 15, 1980, Mr. Elion devoted 5.6 hours to Plaintiff's application for fees.

45. Mr. Elion's hourly rate for this work is $70.00 an hour which is a reasonable rate.

46. After this case was remanded by the Third Circuit in June of 1976, Plaintiff filed three requests for the production of documents and one set of interrogatories.

47. Each of the discovery requests identified in the preceding paragraph was accompanied by a motion to reduce time and a brief in support thereof. (U)

48. This Court denied all of Plaintiff's motions to reduce time in connection with said discovery requests.

49. Elion–Wayne devoted 10.75 hours to the first motion to reduce time.

50. Although the motion was denied because the case was continued, it was reasonable for Elion–Wayne to have made the motion because otherwise Plaintiff could not have conducted any discovery. However, because the motion was denied, it was not reasonably supportive of Plaintiff's claims.

51. On October 6, 1976, Elion–Wayne spent 1.15 hours on the second motion to reduce time. Unlike the earlier motion, Elion–Wayne had sufficient time to conduct discovery and there should have been no need to file this motion.

52. As to each of the four discovery requests referred to above, Plaintiff filed a motion to compel discovery under Rule 37. (U)

53. This Court denied all four of the Rule 37 motions filed by Plaintiff. (U)

54. Elion–Wayne devoted 28.8 hours on the unsuccessful motions to compel discovery.

55. Two of Plaintiff's discovery requests were initiated by Elion–Wayne.

56. Almost all of the time spent by Elion–Wayne was in connection with this discovery.

■ 57. Since, for the reasons set forth below, discovery undertaken by Plaintiff's attorneys has not been shown to have been reasonably supportive of Plaintiff's claims, none of Elion–Wayne's work is compensable.

58. After Plaintiff's case was remanded to this Court in 1976, Defendants filed a petition for writ of certiorari to the Supreme Court on the questions of whether the Court of Appeals had ruled correctly on the issues of sovereign immunity, official immunity and attorney's fees. (U)

59. Defendants' petition for a writ of certiorari was denied by the Supreme Court on November 29, 1976. (U)

60. Bruce J. Terris represented Plaintiff during proceedings in this court after the withdrawal of Robert B. Elion and Robert B. Wayne as counsel for Plaintiff on October 20, 1976. His associates who participated in this case were Eleanor M. Granger, Zona F. Hostetler, Natalie V. Black, Lonnie C. Von Renner, Edward C. Comer, Peter J. Eglick and Suellen T. Keiner.

61. Mr. Terris and his associates together devoted 585.50 hours to work on Plaintiff's case during the proceedings in this court until August 15, 1977 as follows: Mr. Terris, 117.25 hours; Ms. Granger, 386.75 hours; Ms. Hostetler, 43.75 hours; Ms. Black, 8.75 hours; Mr. Von Renner, 4.25 hours; Mr. Comer, 3.50 hours; Ms. Keiner, .25 hour; and paralegals, 21 hours.

62. Mr. Terris and his associates reviewed Plaintiff's case, evaluated the status of the discovery that was in process when they undertook the case, prepared interrogatories and requests for the production of documents, researched and prepared a response to Defendants' motion for leave to file an amended answer, researched and prepared a motion for leave to file amendment to the complaint and a brief and reply brief in support thereof, researched and prepared motions to compel and briefs and reply briefs in support thereof, researched and prepared a motion to take additional testimony on Plaintiff's First Amendment claim, researched and prepared a response to Defendants' motion to take additional testimony, researched and prepared a motion for judgment on Plaintiff's First Amendment claim and a brief and findings of fact and conclusions of law in support thereof, researched and prepared a motion for summary judgment on the nature of the interest created by Article 5e of the Statement of Policy for Continuous Employment and Academic Freedom of Bloomsburg State College and a brief in support thereof, prepared pretrial documents, prepared for and attended the pre–pre–trial conference between counsel, and pre–trial conferences and appeared as counsel for the Plaintiff at the hearings in April and June of 1977.

63. Mr. Terris incurred $2357.50 in expenses up to August 15, 1977, during the course of his representation of Plaintiff in proceedings before this court in 1976 and 1977.

64. $46.00 of Mr. Terris's expenses related to photocopying and mailing of unsuccessful motions.

65. Mr. Terris graduated from Harvard Law School in 1957.

66. Mr. Terris was admitted to the Bar of the District of Columbia in 1957 and to the Bar of the Supreme Court in 1960.

67. Mr. Terris's legal experience has included seven years in the Office of the Solicitor General where he prepared approximately seventy briefs on the merits for cases in the Supreme Court, many of

which were civil rights cases, and seven years in the private practice of law in the areas of civil and constitutional rights and environmental and consumer protection.

68. Mr. Terris's associate, Suellen T. Keiner, graduated from Georgetown University Law School in 1971.

69. Ms. Keiner was admitted to the Bar of the District of Columbia in 1972 and to the Bar of the United States Supreme Court in 1973.

70. Before becoming associated with Mr. Terris in 1972, Ms. Keiner had served a judicial clerkship for one year and had had experience doing legal and factual research in civil rights cases. After she joined Mr. Terris she was the major attorney in two Title VII cases which had been filed prior to the time Ms. Keiner began work on Plaintiff's case in the Supreme Court.

71. Eleanor M. Granger graduated from the George Washington University Law School in 1972 and was admitted to the Bar of the District of Columbia in 1973.

72. During the time since 1975 in which she has been associated with Mr. Terris, Ms. Granger has worked as the major attorney on a civil rights case involving the due process rights of District of Columbia employees, a Title VII case and two employee grievance cases.

73. Zona F. Hostetler graduated from Harvard Law School in 1960 and is a member of the Bar of the District of Columbia and of the Bar of the Supreme Court of the United States.

74. Ms. Hostetler has had seventeen years of experience in the practice of law, primarily in the field of civil rights. She has handled cases for the American Civil Liberties Union and served as the major attorney on an age discrimination case and on a case involving the constitutionality of Department of State regulations forbidding marriages by employees to aliens.

75. Natalie V. Black graduated from the University of California Law School at Berkeley in 1959. She is a member of the Bar of the State of California and of the Bar of the Supreme Court of the United States.

76. Prior to becoming associated with Mr. Terris in 1973, Ms. Black served as an attorney at the Interstate Commerce Commission. Since she became associated with Mr. Terris, she has handled environmental litigation, Title VII litigation and employee grievance cases.

77. Lonnie C. Von Renner graduated from Georgetown University Law School in 1974 and is a member of the Bar of the State of Michigan and the Bar of the District of Columbia.

78. Before becoming associated with Mr. Terris in 1975, Mr. Von Renner served as a law clerk to the Honorable Murray M. Schwartz, United States District Judge for the District of Delaware. Since he became associated with Mr. Terris, Mr. Von Renner has handled civil rights litigation, employee grievances, and consumer cases before federal regulatory agencies.

79. Edward C. Comer graduated from the University of Pennsylvania Law School in 1974 and is a member of the Bar of the Supreme Court of Pennsylvania and the Bar of the District of Columbia.

80. Before becoming associated with Mr. Terris in 1976, Mr. Comer served as an attorney at the Federal Energy Administration. Since he became associated with Mr. Terris, he has handled Title VII and employee grievance cases and consumer cases before federal regulatory agencies.

81. Peter J. Eglick graduated from Georgetown University Law School in 1975 and is a member of the Bar of the Supreme Court of Pennsylvania.

82. Mr. Eglick served in 1975 as law clerk to the Honorable Murray M. Schwartz, United States District Judge for the District of Delaware and in 1976 he worked as an attorney at the Federal Trade Commission.

83. Since he became associated with Mr. Terris this year, Mr. Eglick has worked on one major civil rights case.

84. At the time that they represented Plaintiff before this Court in 1976 and 1977,

Mr. Terris and his associates were engaged in the practice of law in Washington, D.C. where attorneys of the training, experience and skill of the attorneys named below customarily charged an hourly rate for the kinds of services they rendered Plaintiff set forth opposite their names:

| | |
|---|---|
| Mr. Terris | $80.00 |
| Ms. Hostetler | $70.00 |
| Ms. Black | $60.00 |
| Ms. Granger | $50.00 |
| Mr. Von Renner | $50.00 |
| Mr. Eglick | $50.00 |
| Mr. Comer | $50.00 |
| Ms. Keiner | $50.00 |

85. The hourly rates for Mr. Terris and his associates are reasonable.

86. A reasonable rate for paralegal time in 1976 and 1977 was $20.00 per hour.

87. Mr. Terris undertook representation of Plaintiff before this court in 1976 because passage of the Civil Rights Attorney's Fees Awards Act was imminent and Plaintiff's right to recover attorney's fees under the Act was contingent on Plaintiff prevailing. (U)

88. The following attorneys spent the following amounts of time in their initial discussions and review of the case with the Plaintiff: Mr. Terris, 6 hours; Ms. Granger, 7 hours; Ms. Keiner, .25 hour.

89. Mr. Terris and his associates initiated two of the discovery requests mentioned above.

90. Mr. Terris spent 7.75 hours in connection with the above–mentioned discovery; Ms. Granger spent 56.5 hours; and the paralegals spent .25 hour.

91. Of the time spent on discovery, that on the following days by Ms. Granger was devoted to Plaintiff's motions to compel discovery that were denied:

| | | |
|---|---|---|
| October 26, 1976 | .5 | hour |
| November 2, 1976 | .5 | hour |
| November 12, 1976 | .75 | hour |
| November 16, 1976 | 2.00 | hours |
| November 17, 1976 | .25 | hour |
| November 24, 1976 | .50 | hour |
| November 24, 1976 | 1.00 | hour |
| November 24, 1976 | .5 | hour |
| November 26, 1976 | 3.00 | hour |
| November 26, 1976 | .75 | hour |
| December 2, 1976 | .25 | hour |

| | | |
|---|---|---|
| December 2, 1976 | 2.75 | hours |
| December 3, 1976 | 1.00 | hour |
| December 4, 1976 | 2.00 | hours |
| December 5, 1976 | .25 | hour |
| December 8, 1976 | 9.00 | hours |
| December 8, 1976 | .50 | hour |
| December 10, 1976 | 2.50 | hours |
| | 28.00 | hours |

92. Of the time he spent on discovery matters, the following services rendered on the dates indicated by Mr. Terris related to Plaintiff's unsuccessful motions to compel discovery:

| | | |
|---|---|---|
| November 18, 1976 | .25 | hour |
| November 24, 1976 | 1.00 | hour |
| December 9, 1976 | .25 | hour |
| December 10, 1976 | 1.50 | hours |
| | 3.00 | hours |

93. Of the time spent by Mr. Terris on discovery, three hours spent on November 8, 1976 related to review of interrogatories, requests for production and motions. This time was not allocated among the different services.

94. The following spent the indicated time on other discovery matters: Mr. Terris, 1.75 hours; Ms. Granger, 28.50 hours; paralegal time, .25 hour.

95. This court found that Plaintiff was not discharged from his employment at Bloomsburg State College in October of 1970 for reasons violative of the First Amendment. Thus, as to this First Amendment issue, the Defendants are the prevailing parties. (U)

96. This court found that Plaintiff was discharged because of his refusal to follow administrative directives and specific orders from his superiors relating to the scheduling and teaching of classes in the fall of 1970. (U)

97. Plaintiff prevailed in the proceedings in this court on remand in 1976 and 1977 in that this court determined that Defendants violated Plaintiff's due process rights by failing to provide Plaintiff with the procedures to which his contract entitled him in the course of Defendants' decision not to renew Plaintiff's contract beyond the 1970–71 academic year.

98. This court found that Defendant Nossen acted in good faith in not affording

Plaintiff the procedures set forth under Article 5e of the Statement of Policy of Continuous Employment and Academic Freedom.

99. This court found that Defendant Nossen acted in good faith and in a reasonable manner in not affording Plaintiff a due process hearing prior to Plaintiff's termination on October 19, 1970.

100. Proceedings on remand considered the appropriate relief for the Article 5e violation.

101. On remand Plaintiff again sought full reinstatement and full backpay.

102. Neither of these remedies was granted.

103. By order of December 22, 1976, the Court denied two additional motions to compel discovery filed by Plaintiff.

104. Plaintiff's Motion to Take Additional Testimony on his First Amendment claim was denied. (U)

105. Mr. Terris spent 2.50 hours and Ms. Granger spent 25.75 hours in connection with this last–mentioned motion.

106. Plaintiff sought leave to amend his complaint to add names of individual members of the Board of Trustees as Defendants and filed a brief in support.

107. Mr. Terris spent 2.50 hours, Ms. Granger spent 8.25 hours and their paralegal spent 1 hour in connection with this last–mentioned motion.

108. By order of December 23, 1976, that motion was denied.

109. That order was affirmed by the Court of Appeals.

110. Defendants' Motion to Take Additional Testimony on the Issue of Official Immunity was granted. (U)

111. Ms. Granger spent 4.25 hours opposing that motion.

112. Defendants' Motion for Leave to File an Amended Answer Raising the Defense of the Statute of Limitations was granted. (U)

113. Mr. Terris spent 1.25 hours and Ms. Granger spent 6.50 hours in unsuccessful opposition to this last–mentioned motion.

114. The following attorneys spent the following amounts of time in preparation for trial in November 1976: Mr. Terris, 1.25 hours; Ms. Granger, 10.75 hours; Ms. Black, 1 hour.

115. The following attorneys spent the following amounts of time in connection with Defendants' motion for a continuance: Mr. Terris, .25 hour; Ms. Granger, .25 hour.

116. The following attorneys spent the following amounts of time travelling to, attending and returning from the pre–pretrial conference between counsel held on November 29, 1976: Mr. Terris, 9.25 hours; Ms. Granger, 9 hours.

117. Ms. Granger spent 14 hours preparing findings of fact for the November 29, 1976 pre–pre–trial conference between counsel. These findings related to the First Amendment claims, the 5e claim and the good faith issue. The time devoted to the 5e claim was not allocated by Ms. Granger.

118. Ms. Granger spent eight hours preparing pre–trial documents relating to the First Amendment claim, the 5e claim and the good faith issue. Paralegals spent 5.25 hours assembling this material. There was no testimony as to how much of this time was reasonably supportive of the 5e claim.

119. The following attorneys spent the following amounts of time travelling to, preparing for, attending and returning from the pre–trial conference held on December 1, 1976: Mr. Terris, 15 hours, Ms. Granger, 11.75 hours.

120. Ms. Granger spent .25 hour preparing her praecipe for entering her appearance.

121. Ms. Granger spent 1.75 hours in connection with Plaintiff's motion to set trial for a date certain in January. The motion was sought to permit Mr. Terris to attend his father's 75th birthday celebration.

122. Ms. Granger spent .75 hour preparing the motion for a continuance to March which motion was granted.

123. The following persons expended the following amounts of time preparing for a January 1977 pre–trial conference: Mr. Terris, .75 hour; Ms. Granger, 10.25 hours; paralegal, .75 hour.

124. This work related to the First Amendment claim, the 5e claim, and the good faith issue. No attempt was made by the Plaintiff's counsel to allocate these hours to the respective issues.

125. Ms. Granger spent .75 hour drafting a motion to correct an alleged error in one of this court's orders. That motion was not filed.

126. The following persons spent the following amounts of time in February 1977 planning for the rest of the district court proceedings: Mr. Terris, 1.75 hours; Ms. Granger, 4.5 hours.

127. The planning referred to in the immediately preceding finding related to the First Amendment claim, the 5e claim, and the good faith issue. No attempt was made by Plaintiff's counsel to allocate the time among those issues.

128. The following persons spent the following amounts of time in March and April 1977 preparing pre–trial documents: Mr. Terris, 5.25 hours; Ms. Granger, 23 hours; paralegals, 4.25 hours.

129. The time spent as described in the immediately preceding finding related to the 5e claim and the Defendant's claim of good faith. No attempt was made by the Plaintiff's counsel to allocate the time between those issues.

130. Judgment was entered for Defendants on Plaintiff's First Amendment claim on cross motions on March 24, 1977.

131. Mr. Terris spent 11.00 hours, Ms. Hostetler spent 43.50 hours, Ms. Black spent .75 hour, Ms. Granger spent 21.00 hours, and paralegals spent 4.50 hours on Plaintiff's unsuccessful motion and brief regarding the First Amendment claim.

132. Of the time spent on the First Amendment claim, the following attorneys spent the following amounts of time on the statute of limitations issue: Mr. Terris, 4.25 hours; Ms. Hostetler, 37.5 hours; Ms. Black, .5 hour; Ms. Granger, .25 hour.

133. The Article 5e claim was ripe for disposition at the time the case was remanded to this Court in 1976.

134. Mr. Terris filed a motion for summary judgment on the 5e issue on March 31, 1977.

135. Mr. Terris spent 4.25 hours, Ms. Black spent 1 hour, Mr. Comer spent 3.50 hours, Mr. Von Renner spent 4.25 hours, Ms. Granger spent 49.5 hours and the paralegal spent 2.50 hours in connection with that motion and brief.

136. The last mentioned motion was denied on April 14, 1977.

137. The following attorneys spent the following amounts of time travelling to, preparing for, attending, and returning from the pre–trial conference on April 4, 1977: Mr. Terris, .25 hour, Ms. Granger, 13.25 hours.

138. The following persons spent the following amounts of time during the trial on April 14 and 15, 1977: Mr. Terris, 27.50 hours, Ms. Granger, 38.50 hours and paralegals, 1.5 hours.

139. Trial on the Article 5e issue was held on April 14 and 15, 1977.

140. No witnesses were called to testify in support of Plaintiff's claims under 5e because a sufficient record on the issues had been developed at the first trial of this case but documentary evidence in support of the 5e claim was introduced.

141. Testimony on 5e at the April 1977 hearing concerned exclusively Defendant Nossen's good faith in failing to provide Plaintiff the Article 5e procedures.

142. At the fee hearing, Plaintiff's counsel made no attempt to show what additional documents on the 5e issue were admitted into evidence in April 1977.

143. Judgment on the 5e issue was entered on May 18, 1977.

144. This court based its determination that Article 5e created a property right protectible by the 14th Amendment on the Statement of Policy for Continuous Em-

ployment and Academic Freedom and the fact that Plaintiff returned a signed form to the College acknowledging that he had read the Statement of Policy.

145. The discovery undertaken by Mr. Terris's firm did not contribute to Plaintiff's success.

146. Since Plaintiff has failed to demonstrate how the hearing in April 1977 contributed to his success on the 5e issue, the Court cannot determine what amount of time, if any, in preparation for that hearing and attendance at the hearing contributed to Plaintiff's success.

147. Based on the fact that the Court determined the 5e issue from matters already of record in April 1977, the Court concludes that the April 1977 hearing and preparation for it did not contribute to Plaintiff's success.

148. Since little evidence of the 5e issue was presented in the April 1977 trial, preparation for that trial on that issue and the trial should not have exceeded 10 hours by Ms. Granger and 10 hours by Mr. Terris.

149. Mr. Terris spent 15.75 hours, Ms. Black spent 6.00 hours, Ms. Granger spent 42.50 hours and the paralegal spent 1.00 hour in April, May and June 1977 on the issue of remedy in these proceedings.

150. Of the time devoted to post trial work on the merits and remedies, eight hours spent by Ms. Granger on June 11, 12, and 13, 1977 related to affidavits for profer of proof on the First Amendment issue that were never filed.

151. Judgment was entered on the issue of remedies on July 20, 1977.

152. The individual Defendants did not act vexatiously or oppressively in the prelitigation stages of this case.

153. The defense of this case has not been pursued in bad faith, or vexatiously, wantonly or oppressively.

154. Both parties appealed from the District Court's orders of March 24, May 18, and July 20, 1977. (U)

155. Of the 117.25 hours for which compensation is claimed by Mr. Terris, the following hours are not compensable for the following reasons:

155.1 7.75 hours related to discovery that was not shown to have been reasonably supportive of Plaintiff's due process claims.

155.2 9.25 hours related to work on Plaintiff's First Amendment claims on issues other than the statute of limitations.

155.3 53.25 hours related to trial preparation and trial work including work related to the pre–pre–trial conference between counsel and the pre–trial conferences with the Court. This time was not reasonably supportive of Plaintiff's due process claim because a trial on that issue was not necessary.

155.4 15.75 hours related to work on remedies. The work was not reasonably supportive of Plaintiff's due process claims because the Court ultimately ordered as remedies those suggested by the Defendants in their brief in opposition to Plaintiff's motion for summary judgment that was filed on April 11, 1977.

155.5 7.75 hours related to successful and unsuccessful claims but no attempt was made to allocate that time. This 7.75 hours does not include any time that is not compensable for other reasons.

155.6 3.75 hours related to Plaintiff's unsuccessful opposition to Defendants' motion to take more testimony on the good faith issue and on Plaintiff's unsuccessful motion to amend the complaint. This work, therefore, was not reasonably supportive of Plaintiff's due process claims.

155.7 The total number of Mr. Terris's hours that are not compensable is 97.50 hours.

156. Mr. Terris's lodestar for work in the district court on issues other than attorney's fees is $1580.00 arrived at by multiplying 19.75 hours by $80.00 per hour.

157. Of the 386.75 hours for which compensation is claimed by Ms. Granger, the following amounts of time are not compensable for the following reasons:

157.1 56.50 hours related to discovery that was not shown to have been reasonably supportive of Plaintiff's due process claims.

157.2 46.50 hours related to work on the First Amendment claims other than work related to the statute of limitations.

157.3 83.25 hours related to trial preparation, the pre–pre–trial conference between counsel, pre–trial conferences, and the trial in April 1977. That work was not reasonably supportive of Plaintiff's due process claims because those claims were ripe for disposition when the case was remanded.

157.4 42.50 hours related to work on remedies. That work was not reasonably supportive of Plaintiff's due process claim because the relief awarded by the Court was that suggested by the Defendants in April 1977.

157.5 59.75 hours related to successful and unsuccessful claims with no attempt being made to allocate the time. This 59.75 hours does not include time excludable for other reasons.

157.6 19.75 hours related to Plaintiff's unsuccessful motion to amend his complaint and in opposing the Defendants' successful motions to take more testimony on the good faith issue, to amend their answer, and on Plaintiff's motion to correct an alleged error which motion was never filed.

157.7 The total number of Ms. Granger's noncompensable hours is 308.25 hours.

158. Ms. Granger's lodestar for work in the district court on issues other than attorney's fees is $3925.00 arrived at by multiplying 78.50 hours by $50.00 per hour.

159. Of the 43.75 hours claimed on behalf of Ms. Hostetler, 6 hours related to work on the First Amendment claims other than work on the statute of limitations. This leaves a total of 37.75 hours that were reasonably supportive of Plaintiff's due process claims.

160. Ms. Hostetler's lodestar for district court work on issues other than attorney's fees is $2642.50 arrived at by multiplying 37.75 hours by $70.00 per hour.

161. Of the 8.75 hours claimed on behalf of Ms. Black, .25 hour related to work on the First Amendment claims other than on the statute of limitation issue and 6 hours related to work on remedies.

162. Ms. Black's lodestar for district court work on issues other than attorney's fees is $150.00 arrived at by multiplying 2.50 hours by $60.00 per hour.

163. The 4.25 hours spent by Mr. Von Renner were reasonably supportive of Plaintiff's due process claims.

164. Mr. Von Renner's lodestar for district court work on issues other than attorney's fees is $212.50 arrived at by multiplying 4.25 hours by $50.00 per hour.

165. The 3.50 hours spent by Mr. Comer were reasonably supportive of Plaintiff's due process claims.

166. Mr. Comer's lodestar for district court work on issues other than attorney's fees is $175.00 arrived at by multiplying 3.50 hours by $50.00 per hour.

167. The .25 hour spent by Ms. Keiner was reasonably supportive of Dr. Skehan's due process claims.

168. Ms. Keiner's lodestar for district court work on issues other than attorney's fees is $12.50 arrived at by multiplying .25 hour by $50.00 per hour.

169. Of the 21 hours of paralegal time, .25 hour related to discovery, 1.50 hours related to the April 1977 trial, 1 hour related to remedies, 9.75 hours related to successful and unsuccessful claims but no attempt was made to allocate the time and 1 hour related to unsuccessful claims leaving a total of 7.5 hours of compensable time for paralegals.

170. The lodestar for paralegal time for district court work on issues other than attorney's fees is $150.00 arrived at by multiplying 7.5 hours by $20.00 per hour.

171. The following items of expense, insofar as the Court is able to determine from the dates on which they were incurred, which is the only evidence relating to them,

relate to matters the Court has determined did not contribute to Plaintiff's success and, therefore, will not be compensated:

| | | |
|---|---|---|
| November 23, 1976, | Xerox | $105.45 |
| November 29, 1976 | lunch and taxi re pre-pre-trial conference | 5.50 |
| November 29, 1976 | travel to and from Harrisburg | 40.00 |
| November 30, 1976 | parking | 2.00 |
| November 30, 1976 | dinner | 1.50 |
| November 30, 1976 | Xerox | 189.30 |
| November 30, 1976 | meals | 10.34 |
| December 1, 1976 | travel | 66.00 |
| December 2, 1976 | meals and motel | 40.43 |
| January 31, 1977 | Xerox | 102.30 |
| January 31, 1977 | phone | 105.69 |
| March 31, 1977 | Xerox | 109.15 |
| April 14, 1977 | motel and meals | 27.12 |
| April 14, 1977 | travel | 136.50 |
| April 14, 1977 | lunch | 3.15 |
| April 15, 1977 | lunch | 2.80 |
| April 15, 1977 | dinner, breakfast and motel | 77.34 |
| April 30, 1977 | Xerox | $264.55 |
| May 25, 1977 | travel | 36.60 |
| May 31, 1977 | telephone | 65.55 |
| June 7, 1977 | travel | 57.75 |
| June 7, 1977 | food | 7.05 |
| | | $1456.07 |

172. The lodestar for Mr. Terris and associates for district court work for matters other than attorney's fees is $8830.00.

173. Mr. Terris's compensable expenses for that work is $901.43.

174. Louise O. Knight served as local counsel for Plaintiff from October 13, 1976 through August 1977.

175. Ms. Knight consulted Mr. Terris or his associates at least three times by telephone during the proceedings.

176. Ms. Knight conferred with Plaintiff in person and by telephone on three occasions.

177. Ms. Knight charged Dr. Skehan $100.00 representing $30.00 per hour for approximately 3½ hours of her time.

178. $100.00 is also Ms. Knight's minimum fee for acting as local counsel.

179. Ms. Knight's fee is a reasonable one.

180. The total lodestar for work in the district court on matters other than attorney's fees is $11,872.50.

181. Total compensable expenses excluding amounts already taxed are $1193.96.

182. An application for attorney's fees was prepared by Bruce J. Terris and his associates.

183. Mr. Terris and his associates devoted 121.00 hours up to August 15, 1977 to the preparation of Plaintiff's Application for an Award of Costs and Attorneys' Fees as follows: Mr. Terris, 13.75 hours; Ms. Granger, 85.25 hours; Mr. Eglick, 18.75 hours; Ms. Hostetler, 2.00 hours; Ms. Black, 1.00 hour; Ms. Keiner, .25 hour. Ten hours of paralegals' time was also expended in those efforts.

184. Of the time spent by Ms. Granger, 2.00 hours related to fees for appellate work.

185. Mr. Terris incurred $286.48 in expenses up to August 15, 1977, during the course of his work in connection with the preparation and presentation of Plaintiff's Application for an Award of Costs and Attorney's Fees.

186. For the period June 1980 to September 12, 1980, the following attorneys spent the following amounts of time on Plaintiff's application for attorney's fees: Mr. Terris, .25 hour; Ms. Granger, 50.25 hours.

187. Mr. Terris's firm incurred expenses of $266.63 during the period June 1980 to September 12, 1980 in connection with Plaintiff's application for attorney's fees.

188. Prior to May 1, 1977, Mr. Terris and his associates conferred with and assembled materials from all of the attorneys who represented Plaintiff from the time the complaint was filed up to the conclusion of the proceedings in this court at that time. After May 1, 1977, they prepared the application, researched and prepared a trial brief on the award of attorney's fees, prepared findings of fact and conclusions of law, attended a pre-trial conference, and represented Plaintiff at the hearing on the application.

189. The 18.75 hours Mr. Eglick spent in May and June 1977 preparing briefs on the attorney's fee issue did not contribute to Plaintiff's success on the attorney's fees issue.

190. In May and June 1977 Ms. Granger spent 41.25 hours preparing briefs, pre-trial

documents and preparing for and attending a hearing on the attorney's fees issue.

191. This time did not contribute to Plaintiff's success on the attorney's fees issue.

192. Ms. Granger spent 25.75 hours in May and June of 1977 sorting time slips, preparing affidavits and preparing chronologies.

193. It was not reasonable for Ms. Granger to have spent more than 13.00 hours doing the work described in the immediately preceding paragraph.

194. Between May 13 and June 3, 1977 Ms. Granger spent 3 hours researching legal questions relating to attorney's fees and discussing Plaintiff's personal expenses.

195. The time described in the immediately preceding paragraph was not reasonably supportive of Plaintiff's success.

196. Ms. Granger spent 42.50 hours on Dr. Skehan's application for attorney's fees after August 14, 1980.

197. The fee hearing commenced at 11:00 A.M. on September 10, 1980 rather than 10:00 A.M. because Mr. Glassberg requested a delay in order to facilitate Ms. Granger's travel from Washington.

198. Opening statements consumed 40 minutes.

199. Mr. Glassberg then devoted 40 minutes to reading admissions and affidavits into the record.

200. Ms. Granger did not take the stand until 2:30 P.M., 30 minutes after the luncheon recess.

201. Ms. Granger testified for approximately two hours on September 10, 1980.

202. Ms. Granger testified for approximately 3¼ hours on September 12, 1980.

203. Had Court commenced at 10:00 A.M. on Wednesday, September 10, 1980 and had Mr. Glassberg placed Ms. Granger on the stand immediately after the opening statements, she could have concluded her testimony in one day.

204. Twelve hours of time spent by Ms. Granger travelling to and from Williams-port on September 11 and September 12, 1980 was not reasonably incurred.

205. Expenses of $115.49 for Ms. Granger's travel to, stay in and return from Williamsport on September 11 and 12, 1980 were not reasonably incurred.

206. Ms. Granger's lodestar for attorney's fees work is $3325.00 arrived at by multiplying 66.50 hours by $50.00 per hour.

207. Between May 1, 1977 and June 7, 1977, Mr. Terris spent eight hours reviewing pre–trial documents, briefs and attending and appearing at the fee hearing.

208. This time did not contribute to Dr. Skehan's success on the attorney's fees issue.

209. Mr. Terris's lodestar for attorney's fees work is $480.00 arrived at by multiplying 6.00 hours by $80.00 per hour.

210. The two hours spent by Ms. Hostetler, the one hour spent by Ms. Black, and the .25 hour spent by Ms. Keiner all contributed to Plaintiff's success on the attorney's fees issue.

211. The lodestar for Ms. Hostetler is $140.00, for Ms. Black, $60.00, and for Ms. Keiner, $12.50.

212. The 10 hours of paralegal time all contributed to Dr. Skehan's success on the attorney's fees issue.

213. The lodestar for the paralegals' time is 10 hours multiplied by $20.00 per hour or $200.00.

214. The lodestar for the attorney's fees work done by Mr. Terris and associates is $4217.50.

215. The total compensable expenses for Mr. Terris's work on attorney's fees is $437.62.

216. Counsel in the current proceeding, David L. Glassberg, has requested a fee based on a rate of $75.00 per hour for all work related to attorney's fees proceedings. (U)

217. Mr. Glassberg is a 1971 graduate of Temple University Law School and he is a member of the Bar of the Supreme Court of Pennsylvania. From August 1971 until June 1972 he was an Assistant Attorney

General with the Pennsylvania Department of Revenue. From June 1972 until November 1975 he was the Managing Attorney of the Pennsylvania Bureau of Consumer Protection's office in Wilkes–Barre and in that capacity he was involved in numerous injunctive actions resulting from the Hurricane Agnes flood of June 23, 1972. From November 1975 until the present he has been engaged in private practice in Hazelton, Pennsylvania.

218. His current office rate is $55.00 per hour and the increased rate is based on the fact that trial time was contemplated and the somewhat contingent nature of recovery in that no guarantee of payment has been made. However, Plaintiff's counsel have agreed that fees to Mr. Glassberg at that hourly rate would be the first paid out of any fee awarded by the Court. (U)

219. David L. Glassberg represented Plaintiff from October 1977 until the present in connection with the proceedings required under this Court's July 20, 1977 order and in connection with the current Application for Award of Costs and Attorney's Fees.

220. Plaintiff was placed on the Bloomsburg State College payroll in suspended status with pay from July 20, 1977 to June 2, 1978. (U)

221. The Committee on Professional Affairs of Bloomsburg State College was of the opinion that the decision not to renew Plaintiff's contract was for reasons which were violative of his academic freedom.

222. By letter of December 15, 1977, Bloomsburg State College President McCormick advised Plaintiff that he had determined not to begin non–renewal proceedings and directed that pretermination hearings commence.

223. On April 10, 1978 the "Skehan Pretermination Hearing Committee" recommended that Plaintiff's contract be terminated. (U)

224. At a meeting on May 31, 1978 the Bloomsburg State College Board of Trustees after consideration of the report concurred with the Committee's recommendation that Plaintiff's contract be terminated.

225. By letter of June 2, 1978, McCormick notified Skehan that McCormick had accepted the findings and recommendations of the Committee and the Board of Trustees and that Skehan's employment contract was terminated effective that date. (U)

226. Mr. Glassberg devoted 28 hours of work to Plaintiff's case in connection with the non–renewal hearings held pursuant to this Court's Order of July 20, 1977.

227. Mr. Glassberg reviewed Plaintiff's case, prepared for the non–renewal and termination hearing at Bloomsburg State College, researched and prepared various memoranda, and represented Plaintiff at the hearings.

228. At the time Mr. Glassberg represented Plaintiff in connection with the non–renewal proceedings, his customary charge was $40.00 an hour for the kinds of services he rendered Plaintiff.

229. After remand from the Third Circuit the current application for an award of costs and attorney's fees was submitted to this court.

230. Plaintiff's pending application for attorney's fees was prepared by David L. Glassberg.

231. Mr. Glassberg devoted 27.75 hours up to July 14, 1980 to the preparation of Plaintiff's Application for an Award of Costs and Attorney's Fees.

232. From July 14, 1980 to the end of the hearing on attorney's fees on September 15, 1980 Mr. Glassberg devoted 115 hours to said application.

233. The time spent by Mr. Glassberg representing Plaintiff did not contribute to Plaintiff's success on any constitutional claim.

234. Ten hours spent by Mr. Glassberg on July 11 and July 13, 1980 assembling materials for the fee application was not reasonably spent in that it was not shown that an attorney was required to do that work.

235. By letter dated August 7, 1980 from Defendants' counsel to Mr. Glassberg, the Defendants offered to settle the attorney's fees issue for district court work for $15,000.00.

236. This offer was declined by Plaintiff.

237. Mr. Glassberg spent 81.5 hours on attorney's fees issues. after receipt of the Defendant's letter offering to settle the matter.

238. A reasonable rate for Mr. Glassberg's services is $75.00 per hour.

239. All time spent by Mr. Glassberg on the fee application was reasonably supportive of Plaintiff's success.

240. Mr. Glassberg's lodestar is $9,956.25 arrived at by multiplying 132.75 hours by $75.00 per hour.

241. The total lodestar for attorney's fees work is $14,173.75.

242. The total compensable expenses are $437.62.

243. The total lodestar amount for fees and expenses for work in the district court excluding work relating to Plaintiff's motions that were filed in September 1980 is $27,677.83.

### III. Discussion.

The facts underlying this litigation occurred in May 1970 when Plaintiff was notified that his contract would not be renewed after the 1970–71 academic year and in October 1970 when Plaintiff was terminated from his employment as an associate professor in economics at the Bloomsburg State College. The facts and legal issues are set forth in four decisions of this Court, *Skehan v. Board of Trustees of Bloomsburg State College*, 353 F.Supp. 542 (M.D.Pa. 1973); 358 F.Supp. 430 (M.D.Pa.1973); 431 F.Supp. 1379 (M.D.Pa.1977) and 436 F.Supp. 657 (M.D.Pa.1977) and in three decisions of the Court of Appeals for the Third Circuit, *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974); 538 F.2d 53 (3d Cir. 1976) (en banc) and 590 F.2d 470 (3d Cir. 1978). The case has also been considered by the Supreme Court, *Skehan v. Board of Trustees of Bloomsburg State College*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975). The Court, therefore, will limit its discussion of the underlying legal issues and facts to that necessary to place Plaintiff's request for attorney's fees in context. The Court will at times refer to different aspects of the case as *Skehan I* and *Skehan II*.

*Skehan I* consists of this court's opinions reported at 353 F.Supp. 542 (M.D.Pa.1973) and 358 F.Supp. 430 (M.D.Pa.1973), *affirmed in part and remanded in part*, 501 F.2d 31 (3d Cir. 1974), *vacated* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *remanded* 538 F.2d 53 (3d Cir. 1976). *Skehan II* involves opinions reported at 431 F.Supp. 1379 (M.D.Pa.1977) and 436 F.Supp. 657 (M.D.Pa.1977), *aff'd in part, rev'd in part*, 590 F.2d 470 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

Plaintiff was appointed an associate professor of economics at Bloomsburg State College in January 1969. Plaintiff was terminated on October 23, 1970 during the term of his 1970–71 contract. *Skehan I* determined that Plaintiff's termination at that time without a pre–termination hearing was in violation of his rights under the Due Process Clause of the Fourteenth Amendment. Plaintiff also claimed that his termination was substantively improper because it was allegedly in retaliation for his exercise of First Amendment rights. This claim was found to be without merit by this Court and the Court of Appeals in *Skehan I*.

*Skehan II* determined that the Defendants' action in deciding not to renew Plaintiff's contract after 1971 was in violation of the provisions of Article 5e of the College's Statement of Policy for Continuous Employment and Academic Freedom. *Skehan II* also held that Article 5e gave Plaintiff a property right of which he was deprived without due process of law in violation of the Fourteenth Amendment but that Defendant Nossen, the College's President, had acted in good faith. *Skehan II* also found that the decision not to renew Plaintiff's contract was not made for reasons

violative of his First Amendment rights. Finally, *Skehan II* awarded Plaintiff relief in the form of a direction that he be suspended with pay status, the status he enjoyed prior to his termination, and that he be afforded Article 5e procedures and be given a pre–termination hearing.

■ The Court's task in adjudicating a plaintiff's application for attorney's fees under 42 U.S.C. § 1988 may be simply stated even if it cannot be easily discharged. First, the Court must determine if and to what extent the Plaintiff is a prevailing party. Second, if the plaintiff is a prevailing party, the Court must decide whether it should award any fees. Third, if an award of attorney's fees is appropriate, the Court must then calculate the "lodestar" amount for each attorney who represented the Plaintiff. Fourth, the Court must then determine whether the lodestar should be adjusted upwards or downwards. *See Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978).

■ In determining whether a plaintiff is a prevailing party, the Court must determine if he has "essentially succeeded" on a claim, as "claim" is defined in Fed.R.Civ.P. 10(b). *Hughes v. Repko*, 578 F.2d at 487 (3d Cir. 1978). The parties are in agreement that the Plaintiff has prevailed on his claims that he was denied due process when he was terminated and when the decision was made not to renew his contract. Skehan asserts that he prevailed on his First Amendment claim relating to non–renewal, despite the fact that *Skehan II* held that Plaintiff's non–renewal was not for reasons violative of the First Amendment. Plaintiff's argument to the contrary is based on the finding of the Committee on Professional Affairs of Bloomsburg State College after the Article 5e hearing that Plaintiff's contract was not renewed for reasons violative of his academic freedom. Plaintiff then argues that based on *Maine v. Thiboutot,* —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), he is entitled to an attorney's fee for representation before the Committee on Professional Affairs as well as for his attorneys' work in this court on the First Amendment claim. The Court will first discuss whether Plaintiff has prevailed on the First Amendment claim relating to non–renewal and then whether he is entitled to an attorney's fee for work relating to that First Amendment claim.

■ The findings of the Committee on Professional Affairs do not make Plaintiff the prevailing party on his First Amendment claim. Plaintiff had a full opportunity to present his First Amendment claim to this court and to the Court of Appeals and he did so. The determination that the decision not to renew his contract was not violative of his First Amendment rights is res judicata and not subject to collateral attack in any proceeding, including the one before the Committee on Professional Affairs.

Even if Plaintiff were free to relitigate the First Amendment claim, it does not follow that the Committee on Professional Affairs was competent to determine the issue. That committee was composed of Dr. Skehan's fellow faculty members who sat in judgment on conduct of a colleague who the administration had decided not to continue to employ. Faculty members are not competent to, in effect, reverse decisions by this court and the Court of Appeals.

■ Moreover, even assuming that Plaintiff did prevail on his First Amendment claim before the Committee on Professional Affairs, it does not follow that he is entitled to an attorney's fee for work on that issue done in this Court. There was no testimony from which the Court can conclude that any of the work in this Court was reasonably supportive of Dr. Skehan's success before the Committee. In the absence of such testimony, an award of fees for that work is not warranted. *See Hughes v. Repko*, 578 F.2d at 487 (3d Cir. 1978).

■ Plaintiff's reliance on *Maine v. Thiboutot* to support an award of fees for work relating to the 5e hearing is misplaced. *Thiboutot* involved an award of an attorney's fee following litigation in a state court involving a § 1983 action. In this case, there has been no state court adjudication of Plaintiff's constitutional rights.

The legislative history discussed in *Thiboutot* does not compel the conclusion that Congress intended § 1988 to apply to non–judicial proceedings before a body such as the Committee on Professional Affairs. Even if *Thiboutot* can be extended to non–judicial state proceedings, the Article 5e hearing was not a proceeding to vindicate Dr. Skehan's First Amendment rights but was ordered by the Court as a remedy for a past violation of Dr. Skehan's Fourteenth Amendment rights. Consequently, Plaintiff is not entitled to an attorney's fee under § 1988 for work before the Committee.

■ Skehan also contends that the First Amendment issues were not separate claims and that the only "claims" were that his non–renewal and termination were unconstitutional. From this, Skehan argues that the time devoted to the First Amendment claims should be included in the compensable hours. These arguments are without merit.

Federal Rule of Civil Procedure 10(b) defines a claim in terms of "a separate transaction or occurrence." Plaintiff's non–renewal and his termination were each separate transactions or occurrences. In order to succeed on the due process claims, Skehan had only to prove facts showing property interests and that he was deprived of those interests without due process. Those facts are distinct from and unrelated to facts which would prove First Amendment violations. In order to prove First Amendment violations, Plaintiff's proof would had to have related to his actions leading up to the decisions not to renew his contract and to terminate him, the Defendants' perception of those actions, and their reactions to those actions. None of those facts relate to the due process claims so it cannot be said that they involved the same transaction or occurrence. It cannot be said that the "very same legal services [devoted to the successful claims] also supported the prosecution of the unsuccessful claims." *Hughes v. Repko*, 578 F.2d at 487 (3d Cir. 1978).

The relief available had Plaintiff prevailed on either First Amendment claim was different from that which he obtained on the due process claims. Contrary to Skehan's argument that he prevailed on one of two available theories on his two claims, he prevailed on two of his four claims. Plaintiff's due process claims were not alternative theories by which to attack his non–renewal and termination. Those claims went to the process by which the decisions were made while the First Amendment claims addressed the reasons for those decisions. It is for these reasons that the First Amendment claims were separate claims under Fed.R.Civ.P. 10(b) and Skehan's lack of success on those claims precludes him from recovering attorney's fees for work done on those claims, except as hereinafter provided.

Even if the First Amendment issues were part of Skehan's Due Process claims, the time spent on the First Amendment claims is not compensable. None of the First Amendment work, with the exception of work on the statute of limitations, was reasonably supportive of Plaintiff's success for two reasons. First, Plaintiff lost on his First Amendment claims and, second, since different facts and legal principles were involved, the work did not aid his due process claims.

While discussing the concept of "claims" for fee award purposes, it is appropriate to dispose of two of the Defendants' arguments. The Defendants argue that the venue issue, the request for preliminary relief and the question of Defendant Nossen's good faith are all "claims" on which they prevailed. This analysis is incorrect because those issues were all parts of Skehan's due process claims. It does not follow from this, however, that the time spent by Skehan's counsel on those issues is compensable. Since Plaintiff lost on all of those issues, it cannot be said that work devoted to them contributed to his success unless the same work was required for other issues on which he did prevail.

■ Skehan argues as an alternative basis for including as compensable time all

time expended by his attorneys that such time is compensable as long as it was reasonable at the time it was performed for the attorney to have expended the time. This contention is unsupported by the law of this Circuit and, indeed, is contrary to the principles set forth in *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978). That case, by discussing the concept of prevailing claims and providing that only work reasonably supportive of those claims be compensated, clearly refutes Plaintiff's contention. Were the law as Skehan wished it, the inquiry would be only whether the attorney acted reasonably in pursuing the unsuccessful claims. There would be no need to determine whether work was reasonably supportive of a successful claim.

Having determined that Plaintiff prevailed and having identified the claims on which he prevailed, the Court must determine whether to award any fees.

■ The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides, in part, that in any action to enforce a provision of section 1983 "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Although the matter rests in the Court's discretion, a prevailing plaintiff should recover an attorney's fee unless special circumstances would render such an award unjust. *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 496 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). The Defendants, relying on *Buxton v. Patel*, 595 F.2d 1182 (9th Cir. 1979), argue that an award of attorney's fees is inappropriate in this case because the rights enforced relate only to Plaintiff, the Defendants' actions were isolated acts, Plaintiff received adequate compensation, his chances of success were high enough to attract competent counsel without the incentive provided by § 1988, and there is no indication that the Defendants acted in bad faith.

The Court is not persuaded that the analysis in *Buxton* is consistent with the law applicable in this circuit. Moreover, *Buxton* is distinguishable on its facts from this case. That action resulted in an award of $15,000 in compensatory and punitive damages because of the defendants' refusal to lease real property to the plaintiffs in violation of 42 U.S.C. § 1982. In affirming a decision by the district court to deny the plaintiffs an attorney's fee, the Court of Appeals for the Ninth Circuit noted that it was not an abuse of discretion for the district judge to have denied fees based on a finding that the plaintiffs' damage remedy was sufficient and that the case had a high enough probability of success to attract counsel without the incentive of an award of attorney's fees. In this case, however, Plaintiff was entitled to and received only equitable relief and although he was paid in excess of $22,000 in 1979 and 1980 in his suspended with pay status pending his hearings, that was due only to the delay in providing the hearings. If the Defendants had moved more quickly to grant Skehan the hearings required by this Court's order, Skehan would have received far less in compensation. Consequently, because the facts of this case are different from those of *Buxton*, the Court does not find *Buxton* persuasive.

■ The Court adheres to its views that Skehan's inexcusable and egregious conduct precipitated his termination and provided more than adequate grounds for that decision. These actions, however, did not excuse the Defendants from providing Skehan with a pre–termination hearing. The Court concludes that Skehan was deprived of rights guaranteed by the Fourteenth Amendment and that it would not be unjust to award him attorney's fees.

■ Turning now to the third step in this process, the Court must determine the number of hours of each attorney's time that were reasonably supportive of Dr. Skehan's due process claims. This in turn requires the Court to determine not only the number of hours actually devoted to those claims but whether it was reasonably necessary to spend that number of hours in order to perform those legal services. Included among compensable hours are those devoted to unsuccessful claims provided the

"very same legal services" were devoted to successful claims. The burden of persuasion on all these matters rests with Dr. Skehan. *See Hughes v. Repko*, 578 F.2d at 487. Once the hours of compensable time are calculated, they must be multiplied by a reasonable hourly rate for each attorney to yield each attorney's lodestar amount. The Court will discuss the calculation of each attorney's lodestar separately.

 The fourth and final step is a determination whether to modify the lodestar amount. The two principal factors to be considered are the contingent nature of the litigation and the quality of the attorney's work. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973) (Lindy I). A lack of contingency cannot be relied on to reduce the lodestar. *Hughes v. Repko*, 578 F.2d at 488. The law is clear, however, that the lodestar is to be increased only when "exceptional services" have been provided and, of course, Plaintiff bears the "heavy" burden of proving entitlement to such an increase. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir. 1976) (Lindy II). Among the factors set forth to determine contingency are the legal and factual complexities of the case, whether at the time the services were rendered liability was suggested by prior civil or criminal proceedings, the ease of proving damages, the risks assumed in developing the case, and the delay in receipt of payment. *Lindy II*, 540 F.2d at 117.

 To determine the quality of the representation the Court should consider the results achieved in comparison to the relief sought and the benefits conferred upon the plaintiff in relation to the time devoted by the attorney. *Lindy II*, 540 F.2d at 118. In addition, the Court should evaluate the professional methods utilized in the case "rewarding the use of efficient methods . . . and penalizing the use of methods the predominate purpose of which was to delay or obstruct the proceedings." *Lindy II*, 540 F.2d at 118.

 The contingency and quality factors will be addressed separately with respect to each attorney. Plaintiff also seeks an adjustment of all attorney's fees on account of inflation. In support of this request, he cites *Copeland v. Marshall*, No. 77–1351, slip op. at 23–24 (D.C.Cir. September 2, 1980) (en banc). *Copeland*, in turn, cites *Lindy II*, 540 F.2d at 117. The Court has considered the reasoning set forth in *Copeland* and the brief reference in *Lindy II* to a delay in receipt of payment as well as Skehan's arguments in support of his request for an inflation factor and the Court concludes that no adjustment for inflation is appropriate in this case. The fees to be awarded counsel are reasonable and do not warrant further adjustment because of inflation.

Having addressed issues common to all the attorneys, the Court will now discuss each firm's request for fees separately.

### Harry Lore

As the findings of fact make clear, the principal reason that Mr. Lore's lodestar is much lower than the requested lodestar is Plaintiff's failure to prove the number of hours that were reasonably supportive of his successful claims. In finding that Plaintiff has failed to discharge his burden of allocating the time spent by Mr. Lore, the Court is cognizant of the facts that at the time Mr. Lore rendered his services, there was no Attorney's Fee Award Act and that Mr. Lore did not keep contemporaneous time records. Mr. Lore did not testify at the hearing on counsel fees. The only evidence introduced at the hearing relating to Mr. Lore's work was his affidavit setting forth his best estimate of the services rendered and the times spent rendering those services. While Ms. Granger gave her opinion as to the contribution of the unallocated time to Plaintiff's success, that opinion was not based on sufficient investigation or knowledge of supporting facts to support a finding that all the time was supportive of Plaintiff's success. Based on the credible evidence submitted by Plaintiff, the Court

concludes that Mr. Lore's lodestar amount is $2,925.00.

■ Turning now to a determination of whether Mr. Lore's lodestar should be adjusted upwards because of the contingency factor, the Court concludes that it should not. At the time this case was filed, the Supreme Court had decided *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *Roth* reiterated the then existing law that "college professors and staff members dismissed during the terms of their contracts . . . have interests in continued employment that are safeguarded by due process." *Board of Regents v. Roth*, 408 U.S. at 576–77, 92 S.Ct. at 2708–09. Insofar as Plaintiff's termination claim was concerned, therefore, his chances of success in this lawsuit were high.

*Perry* established that the property interest protectible by the Fourteenth Amendment need not be based on a formal contract or tenure system. For that reason, Plaintiff's 5e claim also stood a good chance of success. Indeed, had that claim been presented with any clarity at all to this court initially there is no reason to conclude that the Court would not have reached the conclusion that it subsequently did on the 5e issue.

■ Turning to other factors to be considered, the Court concludes that the case was not particularly complex either legally or factually with respect to due process issues. Moreover, Plaintiff's remedy was not difficult to prove. In fact, once liability was established, the Defendants suggested the type of remedy the Court ultimately awarded. Based on the foregoing, the Court concludes that Mr. Lore's lodestar should not be adjusted upwards because of the contingent nature of Plaintiff's claims.

■ Although this court has been critical of the manner in which Mr. Lore presented Plaintiff's case, upon review of the record the Court concludes that the quality of Mr. Lore's work does not warrant a reduction in the lodestar. While the 5e issue was not raised in this court in *Skehan I*, except in the most tangential fashion, the Court of Appeals's decision requiring a new determination on remedies would have required further proceedings even if 5e had been raised properly in *Skehan I*. The record developed by Mr. Lore on the 5e issue was found by Mr. Terris to be sufficient to present the 5e issue supplemented by a few documents.

· Although the relief ultimately awarded Dr. Skehan was far less than that which he sought, that was not due to the quality of Mr. Lore's representation. On balance, the Court concludes that Mr. Lore's representation warrants neither a reduction nor an augmentation of the lodestar. Consequently, Mr. Lore will be awarded attorney's fees in the amount of $2925.00, his lodestar.

■ The Defendants argue that Mr. Lore may not obtain any additional compensation for expenses because the judgment entered May 11, 1973 granted costs to Plaintiff and that these costs were taxed against the Defendants on June 4, 1973 in the amount of $171.60. The Court rejects this contention because the costs then taxed related to common court costs such as filing fees. The additional amount for expenses sought by Mr. Lore is reasonable and the expenditures contributed to Plaintiff's success. The Court, therefore, will award Mr. Lore $292.53 in addition to the $171.60 previously taxed.

### Elion–Wayne

Although the Court has determined that for the most part the work done by Elion–Wayne was reasonably undertaken, the Court will not award that firm any fees because its work has not been shown to have contributed to Plaintiff's success.

Elion–Wayne entered the case following the first remand to this court and its work consisted entirely of discovery related matters. As indicated elsewhere in this opinion, the 5e issue was submitted to the Court on the basis of the record of the preliminary injunction hearing as augmented by some additional documentary evidence. There

was no credible testimony showing that these documents were obtained from the Defendants. Even assuming they were obtained from the Defendants, there was no evidence that they were obtained as the result of discovery undertaken by Elion–Wayne. Although it is the Court's view that the obligation to present evidence of this kind rested with Plaintiff, the Court has examined the voluminous record in this case and determined that the bulk of the documentary evidence relied on by the Court in its May 18, 1977 opinion on the 5e issue was submitted in evidence at the 1973 preliminary injunction hearing.

Moreover, there was evidence at the fee hearing that many of Elion–Wayne's discovery requests were objected to because they were repetitious. Far from being evidence on the record supporting Plaintiff's contention that the Elion–Wayne discovery contributed to his success, there is abundant evidence indicating that that discovery was not reasonably supportive of Plaintiff's claim. Based on Plaintiff's failure to prove how Elion–Wayne's work was reasonably supportive of his successful claims, no award of fees or expenses to that firm will be made.

■ Since Elion–Wayne is not entitled to fees for its work on the merits, the Court concludes that Mr. Elion's work done on the attorney's fees application was not reasonably supportive of that application and, therefore, is not compensable.

### Bruce J. Terris

The lodestar amounts for Mr. Terris and his associates is less than the requested amounts for three reasons. First, Plaintiff failed to allocate time devoted to successful and unsuccessful claims or prove that all the unallocated time contributed to his success. Second, Plaintiff failed to prove that discovery undertaken by Mr. Terris was reasonably supportive of Plaintiff's successful claims. Third, Plaintiff failed to prove that the hearings in 1977 were reasonably supportive of his success.

■ The Court recognizes that it may at times be impractical for attorneys to keep track of their time in terms of issues or claims presented in a case. This, however, does not excuse Plaintiff from presenting credible evidence that the hours expended by his attorneys were reasonably supportive of his successful claims. To use but an example, it is clear that time spent researching a brief addressing two issues will be greater than when one claim or issue is involved. Ms. Granger, while testifying at the fee hearing, had the opportunity to state what portion of the unallocated time was reasonably supportive of Plaintiff's successful claims. In fact, she did so in certain instances relating to the attorney's fees application. In other areas, however, no attempt was made to allocate the time or the testimony was only that all the time was supportive. Such conclusory testimony does not carry the Plaintiff's burden since all such time could not have supported Plaintiff's successful claims when unallocated blocks of time were devoted to successful claims and to claims on which Dr. Skehan did not prevail and the claims had few, if any, factual or legal issues in common. Since Plaintiff had the burden of showing what hours were reasonably supportive of his successful claims and since he has, to the extent found by the Court in its findings of fact, failed to do so, the Court concludes that the unallocated time is not compensable.

The Court concludes that the discovery undertaken after the first remand from the Court of Appeals has not been proved to have been reasonably supportive of Skehan's success. This conclusion is based on the fact that the 5e issue was submitted on the basis of the record developed at the preliminary injunction hearing supplemented by certain unidentified documents of unknown origin. The factual base of the Court's decision on the 5e issue was the Statement of Policy for Continuous Employment and Academic Freedom itself. The discovery undertaken after remand was not necessary to produce that document and ¶ 5e thereof which were referred to in a previous Court of Appeals decision in this

case reported at 501 F.2d 31, 38 (3d Cir. 1974). There was testimony that much of the discovery related to the First Amendment claims and the issue of Defendant Nossen's good faith. That discovery was not reasonably supportive of Plaintiff's success because Plaintiff did not prevail on any of those issues. For these reasons, Plaintiff has failed to carry his burden that discovery after remand was reasonably supportive of his success.

The Court's conclusion that the 1977 hearings were not reasonably supportive of Plaintiff's success rests on a similar foundation. Ms. Granger testified at the fee hearing that the only additional evidence submitted in April 1977 on the 5e issue was certain documentary evidence not otherwise described. An examination of the Court's opinion of May 18, 1977, reported at 431 F.Supp. 1379, discloses that the Court based its decision on the 5e issue on the language of the Statement of Policy of Continuous Employment and Academic Freedom and the fact that Plaintiff was required to and did sign a form indicating that he had received and had read that statement. Both these documents were part of the record at the preliminary injunction hearing. There was, therefore, no need for a second hearing on the 5e issue to establish these matters.

The fact that the Court on April 14, 1977, the first day of trial, denied Skehan's motion for summary judgment on the 5e issue does not require a contrary conclusion. In that order, the Court indicated there were material issues of fact in dispute "such as the date the Plaintiff received notice of non–renewal of his contract ... and whether Skehan invoked the provisions of 5e ... in a timely fashion. The Court will hear evidence on these matters at the trial." However, no evidence was presented on these matters at trial, according to Plaintiff's then trial counsel, Ms. Granger. Moreover, Plaintiff did not file his motion for summary judgment on the 5e issue until March 31, 1977, one working day before the final pretrial conference of Monday, April 4, 1977. The Defendants filed their brief in

opposition on April 11, 1977. As the Court's order of April 14, 1977 states: "[T]he Court had indicated that it would decide the issue, if humanly possible, within two working days.... However, the Court was engaged in trial and had other legal matters of considerable complexity to handle in that two–day period and in the evenings of April 11 and April 12, 1977." It is, therefore, entirely likely that had Plaintiff filed his motion for summary judgment early enough to give the Court time to consider it fully, he might well have been awarded summary judgment on the 5e issue. It is for these reasons that the Court concludes that the April 1977 trial did not contribute to Dr. Skehan's success on the 5e issue and for that reason the Court has disallowed time for preparation for that trial, the pre–pre-trial conferences between counsel, the pre-trial conferences relating to it and the trial itself.

The Court will make an additional observation concerning Mr. Terris's work in connection with that trial. Since no testimony was adduced at the trial on 5e and only a small amount of documentary evidence was offered, it is the Court's view that the amount of time devoted to preparation for that hearing was excessive. A reasonable amount of time for preparation and trial of the 5e issue was 10 hours by Ms. Granger and 10 hours by Mr. Terris. There was no need for both to be present at the trial. A total of 20 hours for preparation and trial is a reasonable amount of time in light of the issues in dispute and the amount of evidence presented. The Court makes these findings now to avoid the need for further proceedings if the Court of Appeals reverses this Court's determination that the April 1977 trial was unnecessary.

The Court has concluded that the June 1977 trial on remedies was not reasonably supportive of Plaintiff's success because the relief awarded was essentially that suggested by the Defendants as early as April 11, 1977 when they filed their brief in opposition to Plaintiff's motion for summary judgment on the 5e issue. While it was reasonable for Plaintiff's attorneys to

continue to seek more extensive relief, those efforts were not, in light of the relief ultimately awarded, reasonably supportive of Plaintiff's success. Consequently, Mr. Terris is not entitled to compensation for the hours expended in connection with that trial.

Having explained its reasons for the lodestar amounts for Mr. Terris and his associates, the Court will now discuss adjustments to the lodestar. Turning first to the contingency factor, the Court concludes that no upwards adjustment is warranted. In light of the Supreme Court's decisions in *Roth* and *Perry*, the Plaintiff's chances of success on the 5e claim were high. Indeed, the Court's opinion at 431 F.Supp. 1379 found a property interest created by 5e with little difficulty and based primarily on Pennsylvania law of some age. Further, the case did not present complex legal or factual issues and it was not difficult for Plaintiff to prove his claims. After giving due consideration to the factors listed in *Lindy I*, 487 F.2d 161 (3d Cir. 1973), *Lindy II*, 540 F.2d 102 (3d Cir. 1976), and *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), the Court concludes that no upward adjustment because of contingency is appropriate.

Mr. Terris and his associates ably represented the Plaintiff before this court. The quality of that representation, however, was not of such outstanding nature to warrant an upward adjustment in the fees.

Mr. Terris's request for expenses was not granted in full because to the extent indicated in the findings of fact, the Plaintiff did not prove that those expenditures contributed to his success.

Turning now to Mr. Terris's request for fees relating to prosecution of the fee application, the Court eliminated from the compensable hours those hours relating to briefs and similar work because that work did not contribute to Plaintiff's success in that it was duplicative of the work subsequently performed by Mr. Glassberg. The Court has relied exclusively on Mr. Glassberg's briefs because they represent more current law than those prepared by Mr. Terris in 1977. In addition, the time spent on proposed findings of fact did not contribute to Plaintiff's success on the attorney's fees issue because it was duplicative of work subsequently performed by Mr. Glassberg whose work was relied on in part by the Court in making its findings of fact.

The Court found that 12 hours of Ms. Granger's time spent travelling to and from the fee hearing in September, 1980 and associated expenses were not reasonably incurred because Ms. Granger could have completed her testimony in one day. The Defendants should not be required to bear the costs of this time when there was no good reason requiring Ms. Granger's testimony to be spread over two days. The Court disallowed 12.75 hours spent by Ms. Granger sorting time slips and preparing documents because that work should not have required all the time Ms. Granger devoted to it. The remaining time multiplied by the appropriate hourly rates yields a lodestar for Mr. Terris's firm of $4217.50 for work on the fee petition.

The calculation of the appropriate award for time spent preparing and litigating the fee award application is made differently from the calculation for the fee for work on the merits. Once the lodestar is determined, it cannot be modified because of contingency or quality. *Bagby v. Beal*, 606 F.2d 411, 416 (3d Cir. 1979). The Court must determine whether the lodestar amount is reasonable in the particular case in light of the guidance provided in the legislative history to § 1988 which in turn refers to the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). [1976] U.S.Code Cong. & Admin. News, 5908, 5913. After giving consideration to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the Court concludes that an award in the amount of $3500.00 plus expenses of $437.62 is a reasonable fee for Mr. Terris's and his associates' work on the attorney's fee issue. The major reasons for an award lower than the lodestar are that the compensable part of Mr. Terris's firm's time involved developing the factual record in support of Plaintiff's fee application.

The degree of legal skill required to compile the time records in support of the application was not great, the factual and legal issues involved in that work were not novel or complex, the relief awarded Plaintiff did not result in his rejoining the faculty of Bloomsburg State College, the Court's award of fees for work on the merits is far less than the amount sought by Mr. Terris and there was no evidence that Mr. Terris's representation of Plaintiff precluded him from other employment. *See Johnson v. Georgia Highway Express*, 488 F.2d at 718–19 (factors 2, 3, 4 and 8).

### Louise O. Knight

■ The Court has approved Ms. Knight's application for fees in its entirety because her work as local counsel did contribute to Plaintiff's success and her fee was a reasonable one. Because of the limited nature of her involvement, no adjustment for contingency or quality of work is warranted.

### David L. Glassberg

In light of the Court's determination that Plaintiff's success at his 5e hearing before the Committee on Professional Affairs does not constitute success on a claim of this litigation, the Court will not award fees based on Mr. Glassberg's work in connection with that hearing. That hearing was part of the remedy afforded Plaintiff. Dr. Skehan was free to retain counsel if he felt that it was advisable but the Defendants do not have an obligation to pay for that counsel.

■ The Defendants have argued that the Court should consider that on August 7, 1980 the Defendants offered to settle the attorney's fee aspect of this case for a total of $25,000, allocated $15,000 for district court work and $10,000 for appellate work in determining an appropriate fee for Plaintiff's attorneys. The Court has determined that as of a reasonable time after August 7, 1980, Plaintiff was entitled to an attorney's fee of in excess of $15,000 for district court work alone. Therefore, it was not unreasonable for Plaintiff to decline Defendants' offer and continue to litigate the issue. In addition, Defendants' offer was to settle Plaintiff's claims for fees for all work, including appellate work. Since that work has yet to be evaluated, the Court cannot conclude that Plaintiff acted unreasonably in declining Defendants' offer of $25,000. Consequently, no adjustment on account of the settlement offer is warranted.

The Court found that the number of hours spent by Mr. Glassberg in representing the Plaintiff in connection with his application for attorney's fees was reasonable. Having considered the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the Court will, however, award Mr. Glassberg an amount less than his lodestar.

■ Mr. Glassberg's task in presenting Plaintiff's case for fees entailed the preparation of the legal arguments in support of Plaintiff's application and litigating the application. Mr. Terris's firm did substantially all the work necessary to present the factual grounds in support of the fee petition. A large portion of Mr. Glassberg's time undoubtedly was spent researching issues such as Plaintiff's entitlement to fees for First Amendment claims and for Mr. Glassberg's representation before the Committee on Professional Affairs. These efforts did not bear fruit as the Court will not compensate counsel for work relating to those issues. The fee application did not present novel or difficult legal questions. There was no evidence that Mr. Glassberg was precluded from other employment because of his representation of the Plaintiff or that the case was a particularly undesirable one. As indicated above, Plaintiff's success did not result in his re–employment and the award of fees is far less than the amount sought. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718–719 (factors 2, 4, 8, 10). In light of all the circumstances, an award of $3500.00 to Mr. Glassberg is reasonable.

### Joseph T. Skehan

Plaintiff seeks an award of $12,871.37 representing expenses he claims to have

incurred in litigating his claim. The Court precluded evidence of these expenses from being offered at the hearing. The Court based its decision on two grounds: First, Plaintiff's request for fees of this kind had previously been denied by this Court and that denial was affirmed by the Court of Appeals and, therefore, constituted the law of the case; second, the Plaintiff is not entitled to expenses of this kind under the Attorney's Fees Awards Act.

■ Plaintiff's May 25, 1977 application for attorney's fees sought costs in an amount in excess of $11,000.00. The Court's opinion reported at 436 F.Supp. 657, 667 (M.D.Pa.1977) held that Dr. Skehan was not entitled to these expenses under § 1988. On appeal, the Court of Appeals addressed this contention and affirmed this Court's decision not to award those expenses to the Plaintiff. *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d at 496. Consequently, the matter is foreclosed as having been previously litigated in this case and decided adversely to the Plaintiff.

■ An alternative base exists on which to deny Plaintiff's request for personal expenses. The case relied on by the Plaintiff in support of his request, *Pitchford Scientific Instruments Corp. v. Pepsi, Inc.*, 440 F.Supp. 1175 (W.D.Pa.1977), *aff'd without opinion*, 582 F.2d 1275 (3d Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979), was not a civil rights action but an antitrust action. Title 15 U.S.C. § 15 provides that a successful plaintiff is entitled to recover his "cost of suit." The district court in *Pitchford* found that the plaintiff's expenses were part of its "cost of suit." 440 F.Supp. at 1179.

Unlike 15 U.S.C. § 15, 42 U.S.C. § 1988 provides that a plaintiff may recover "a reasonable attorney's fee." If Congress had intended to authorize the recovery of a plaintiff's personal expenses, it would have done so by language similar to that used in the Clayton Act. The Court is unwilling to read the term "attorney's fee" to include expenses incurred by the Plaintiff.

*Conclusion*

This litigation has been pending for practically eight years and its end is not in sight. The Plaintiff has successfully vindicated procedural rights guaranteed by the Fourteenth Amendment. He has not to date, however, succeeded in his original and continuing quest for full reinstatement and back pay. The Court will award Dr. Skehan's attorneys $18,872.50 in fees and $1613.58 in expenses, an amount that the Court believes is reasonable in light of the time spent on the case, its difficulty, and the results achieved.

### IV. Conclusions of Law.

1. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, applies retroactively to cases pending at the time of its enactment.

■ 2. The Eleventh Amendment to the Constitution of the United States does not bar an award of attorney's fees in this case.

3. The Plaintiff is the prevailing party in this action with respect to his claims of denials of due process in the non-renewal and termination decisions affecting him.

4. The Plaintiff is entitled to an award of reasonable attorney's fees as part of his costs.

5. The Plaintiff did not prevail on his First Amendment claims.

6. The firm of Elion–Wayne is not entitled to any fees.

7. The lodestar amount is a reasonable fee for each attorney who is entitled to fees with the exception of Mr. Terris and his associates and Mr. Glassberg for work relating to prosecuting the application for attorneys' fees.

8. Downwards adjustments in Mr. Glassberg's and Mr. Terris's lodestars are warranted for that work.